## Alf Cogdell v. The State.

### No. 2218.   Decided June 12, 1901.

**1.—Impeachment of Witness by Contradictory Statements.**

It is a general rule that a witness can only be impeached by contradictory statements by showing that he had made a statement in regard to some fact or facts testified to by him on the trial at another time and place different from his evidence at the trial. It can not be done by proof of a collateral matter which is the mere opinion of the witness.

**2.—Same.**

A witness can not be impeached by immaterial matter upon a collateral issue, and when such impeachment is permitted and the testimony is of a damaging character, it is beyond the power of the court to control it in the charge.

**3.—Attempt to Suborn Witness.**

Before evidence of an attempt to suborn a witness is admissible, it must connect defendant with the subornation or attempted subornation; it must not be left to inferences.

**4.—Charge of Court—Practice as to.**

The court, in giving substantive defensive charges, should always couple them with the reasonable doubt, to wit, if the jury believe, etc., or if they have a reasonable doubt with reference to the defensive matter, to give defendant the benefit of such reasonable doubt and acquit him.

**5.—Continuance.**

An application for continuance legally presented on a trial for murder should be granted for the absence of a witness who saw deceased with a knife during a stage of the difficulty about which no other witness testified.

Appeal from the District Court of Hill. Tried below before Hon. W. Poindexter.

Appeal below from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

Appellant was charged by the indictment with the murder of Jesse Watson, on the first day of October, 1898, by striking him with a rock. The following concise statement of the essential facts adduced at the trial is taken from appellant's brief, viz:

The undisputed facts are that J. P. Williams, the father-in-law of the deceased, after dark appeared at the front door of a barber shop in the town of Covington and called the appellant out and demanded of him an explanation of something that he had heard that the appellant had said. Appellant walked out and said, "Let's get farther away and I will explain it." They walked together in the nighttime, and when a few steps from the barber shop they stopped, and appellant noticed that deceased (between whom and himself there did not exist a friendly feeling, and who lived at the residence of the witness J. P. Williams) was standing near him. After a few words appellant and deceased engaged in a fist fight and were soon separated.

While two parties held appellant, deceased was turned loose, and he struck appellant several times over the head and in the face. When they were separated the second time deceased had a knife in his hand. Appellant then walked some sixty feet away in the dark, in company with Williams, the father-in-law of deceased, the deceased remaining with a crowd that in the meantime had gathered around. When appellant and the witness stopped witness again demanded an explanation from appellant, to which appellant replied: "Wait. I am pretty hot now, but no damned son of a bitch could run over me." Deceased, who was sixty feet away, demanded to know if he was called a son of a bitch, and started toward appellant in the dark, and some one in the crowd hallooed: "Look out; he is coming with a knife." As he approached appellant disclaimed having applied the epithet to deceased, but repeated what he did say. Deceased then replied that nobody had tried to run over him, and appellant then replied that that was a lie.

It is shown by appellant's witnesses and his own testimony that while the deceased advanced on appellant the latter stood his ground only until deceased was in five or six feet of him, when he retreated a step or two, and while deceased was striking at him—making, as some of the witnesses say, "knife licks,"—appellant threw the rock and struck deceased on the head, and inflicted a wound which resulted in the death of the deceased some fifteen days later.

*Wear, Morrow & Smithdeal* and *Spell & Phillips,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at two years confinement in the penitentiary.

Appellant, during the trial, put Sid Huddleston on the stand, and proved by him a threat on the part of deceased against defendant, made on the evening of the homicide, only a short time before it occurred. On cross-examination the county attorney was permitted to ask said witness if he did not, at a certain time and place, subsequent to a former trial of the case, state to Charley Cleveland, "that they had not done him right; that after he had accommodated them and swore what he did to get a new hearing, by God they went square back on him, and did not do what they agreed to do, and if they put him back on the stand, he would tell the truth about it; and if they asked the right questions he would fix Alf." The witness denied that he had made any such statement. The State was then permitted to prove by Charlie Cleveland, at the time and place mentioned, said witness, Huddleston, made to him the statement as set out above. Appellant objected to the cross-examination of his witness Sid Huddleston, and then objected to the introduction of the witness Cleveland. His objections were on the ground that it was an attempt to lay the predicate to impeach his witness Huddleston upon an immaterial and collateral issue, and that said testimony involved a mere matter of opinion, and not any fact which would go to the impeachment of the witness, and that such testimony would not be admissible as an original part of the case. And furthermore, that it was an inquiry involving an agreement, and it was not shown that defendant had knowledge of such agreement or was in anywise privy thereto. The court overruled these objections and admitted the testimony, and explains the bill of exceptions by showing that he limited the testimony to the impeachment of the witness Huddleston in the charge of the court. It is a general rule that a witness can only be impeached by contradictory statements, by showing that he made a statement in regard to some fact or facts testified to by him on the trial at another time and place different from his evidence at the trial. But this testimony does not appear to come within that rule. It does not embody a traverse of any fact sworn to by the witness on the trial. Indeed it is not the statement of any fact at all, but the statement of a conclusion from which it might be inferred that the witness knew some facts that would be exceedingly detrimental to appellant. In other words, that such facts, in the opinion of the witness, would fix appellant; evidently meaning they would convict him. The matter was not only collateral, but it was a mere opinion of the witness; such opinion, however, as might prove with the jury very damaging to appellant. It occurs to us that this testimony was illegal, and comes clearly within the rule laid down in Drake v. State, 29 Texas Criminal Appeals, 265. A witness can not be impeached by immaterial matter upon a collateral issue (Walker v. State, 6 Texas Criminal Appeals, 577; Johnson v. State, 27 Texas Criminal Appeals, 163), and when such testimony is of a damaging character, it is beyond the power of the court to control it. However, it is contended that the testimony shows an attempt was made by appellant to suborn the witness, and that this can

always be proven as a circumstance against an appellant. If it had been shown that appellant had made some proposition to the witness Huddleston to swear to some particular fact, or that he had attempted to tamper with him in reference to his testimony, undoubtedly this could be shown. But in such case this must not be left to inferences. In order to be admissible, the evidence must connect appellant with the subornation or attempted subornation of the witness. Favors v. State, 25 Texas Crim. App., 155. Does this bill show that appellant had tampered with, or attempted to tamper with the witness? It is stated by Charley Cleveland that Huddleston said "they had not done him right, that after he had accommodated them  *   *   *   they went back on him and did not do what they agreed to do." Now, if we can assume that "they" unquestionably meant appellant, then we have him connected with this matter. Can we assume it? We think not. Still, the impression produced on the jury—as undoubtedly it was intended—was that appellant instigated this, or had something to do with it; and consequently it was calculated to prejudice appellant's rights. As stated before, the testimony was illegal, and, in our opinion, it was of such a character as that the court could not adequately control it by a charge. See Hurst v. State (Texas Crim. App.) 40 S. W. Rep., 264. In this connection we would observe appellant was convicted of manslaughter, and his punishment assessed at two years confinement in the penitentiary. Appellant's theory was self-defense, and he supported this theory with some very cogent testimony. In such a state of case, evidence tending to show that he had been fabricating testimony showing a threat made against him by deceased, or that he had been suborning a witness to testify for him, who knew facts against him that would fix him, was, in our opinion, well calculated to prejudice him before the jury, and turn the scale against him.

Appellant also complains of certain charges of the court to the effect that it required the jury to find the exculpatory facts in favor of appellant before they would be authorized to acquit him. With reference to charges of this character, we would observe that the proper practice would always suggest that the court, in giving substantive defensive charges, should couple them with the reasonable doubt, to wit, if the jury believe, etc., or if they have a reasonable doubt with reference to the defensive matter, to give defendant the benefit of such reasonable doubt, and acquit him. There is some contrariety of the decisions on this subject, but by a little care and attention such difficulties may always be obviated.

It is not necessary here to discuss the motion for continuance, but in our opinion it should have been granted on account of the absence of the witness Green, who saw deceased with his knife during a stage of the difficulty about which no other witness testified. The judgment is reversed and the cause remanded.

*Reversed and remanded.*