## T. J. PARKER v. THE STATE.

### No. 2689. Decided May 4, 1904.

#### 1.—Evidence—Tracks—Murder.

Where a State's witness testified that he found a track near the scene of the homicide leading from there towards defendants home; that the tracks seemed to have been made by a worn shoe; that he did not measure these tracks, or the track or shoe of defendant after the homicide, but saw the shoes defendant had on after the same, and did not believe said shoes would make the track he found on the ground, but they were about the same length and size; that he did not have defendant make a track and compare it with the track he found; that he observed defendant's foot and saw him make a track in the sand and it looked to be the same sized shoe as the track he found; it was held that this testimony was inadmissible.

#### 2.—Same—Opinion Must Be Based on Sufficient Facts.

Unless the witness details sufficient facts, in order to give his opinion to the jury as to the similarity of tracks made upon the ground at the locus in quo and those known to be made by the accused, his testimony giving such opinion is inadmissible.

#### 3.—Same—Existence of Certain Tracks a Circumstance.

Where a witness merely stated that he trailed certain tracks from near the scene of the homicide to or near defendant's home, describing them, and the tracks he trailed appeared to him to be the same tracks, the testimony is admissible as a circumstance tending in some degree to connect appellant with the offense.

#### 4.—Same—Trailing by Bloodhound.

Where the track assumed to be that of the murderer, and which the circumstances in evidence tend to show was his track, was pointed out to a dog of the hound species who was trained in trailing tracks of human beings, and the dog trailed this track from where it was pointed out to him to the residence of the defendant, some mile and a half, and the course of his pursuit of the track was followed by witnesses, who testified in the case and showed that the dog followed this track which they saw upon the ground and described, such character of testimony was held to be admissible.

#### 5.—Impeachment of Witness.

Beliefs, acts, or opinions of witnesses as to who perpetrated the offense are inadmissible in evidence and can not form the predicate for their impeachment, and where such testimony is admitted over the objections of defendant it is considered harmful and reversible error.

#### 6.—Confessions—Must Be Voluntary.

Where one is under arrest his statement can not be evidence against him unless it is voluntarily made, and when he is rigidly cross-examined by the State's attorney, after making a general statement upon being warned, his answers as to such interrogatories are inadmissible as a confession.

Appeal from the District Court of Marion. Tried below before Hon. P. A. Turner.

Appeal from a conviction of murder in the second degree; penalty, eighteen years imprisonment in the penitentiary.

The evidence is quite voluminous and circumstantial in character. There were no eyewitnesses to the homicide. The deceased was a young man who on the morning of the killing was taken over to his new home by his father, who went on further to the town of Pittsburg in a wagon. His son got off near an old vacant house on his place to build a fence. Shortly after, while the father on his return sought shelter from the rain under the eaves of a church near the road, and about three-fourths of a mile from his son's place, he heard two shots in that direction, and immediately drove over to his son's place and found him dead on the ground, near the old vacant house where he had left him and where he had evidently been digging post holes. He discovered one shot in his back and another in his left temple; both shots were inflicted with nine buckshot. The deceased had just moved with his young wife into a new house which his father had built for him, and had married the daughter of the defendant about three weeks before the homicide, against the latter's consent. The new house was about one hundred yards from the old vacant place where the homicide occurred; the country was brushy around there, and it seems neither the wife of deceased nor his mother, who were both over at the new house, knew of the killing until the deceased's father went over and told them and sent for the officers. It was shown that after the marriage of deceased and defendant's daughter, the defendant generally carried a gun with him wherever he went; but it was also in evidence that he told the parents of deceased after the marriage that he would cease making further objections. The only circumstances which pointed to defendant's guilt were his objections to his daughter's marriage; his carrying the gun; his confessions to the district attorney that if he did the shooting he had no recollection of it; the tracks near the scene of the homicide, which were trailed to his home and the trailing of the bloodhounds of tracks along the same course. The person who did the shooting had evidently, from the tracks found on the ground, stood near an open window of the old vacant house and fired the two shots at deceased from ambush.

*Sam D. Snodgrass, A. S. Zachry,* and *L. S. Schluter,* for appellant.— Before a witness is authorized to give opinion as to the similarity of tracks as a circumstance of guilt in a criminal case, he must be definite and positive as to the size of said tracks, or as to some peculiarity that would identify them. Smith v. State, 77 S. W. Rep., 453; Grant v. State, 58 S. W. Rep., 1025; Gill v. State, 38 S. W. Rep., 190.

On question of impeachment on matters of opinion: Drake v. State, 15 S. W. Rep., 725; Cogdel v. State, 63 S. W. Rep., 645; Collins v. State, 66 S. W. Rep., 840.

The court erred in permitting the witness W. D. Sanders to testify over the objection of defendant as follows: "When this dog opens up

on a track you had just as well let him run that track to its destination, because you can not get him to run another until he satisfies himself about that one. He is going to run each track till he is convinced that he has reached his destination." This evidence was not admissible, because it was the opinion of the witness, and a matter about which he could not give his opinion.

Again, the reply of defendant to the effect that, "Men, if I did, I don't have any recollection of it; I may have done it, but I don't have any recollection of it; my mind was a blank," could not be held as a voluntary statement, and hence the defendant's objection thereto, as shown by said bill number 5, we think should have been sustained. The rule, as we understand it, is that the statement must be voluntarily made. Lauderdale's case, 31 Texas Crim. App., 50. See also notes to Daniels' case, 6 Am. St. Rep., 245.

*Howard Martin,* Assistant Attorney-General, for the State.—On question of confessions: Tidwell v. State, 40 Texas Crim. Rep., 38; Carlisle v. State, 37 Texas Crim. Rep., 108; Bailey v. State, 26 Texas Crim. App., 706.

HENDERSON, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of eighteen years; hence this appeal. This case is one depending on circumstantial evidence. The theory of the State being that appellant was opposed to the marriage of his daughter to diseased, which occurred about twenty days before the homicide. The State's case depended on the identity of appellant as the person who committed the homicide. This involved a number of circumstances, which, it is insisted, point to appellant—such as former conduct of appellant toward deceased, particularly after intermarriage of deceased with his daughter; also tracks found at and near the place of the homicide and leading to the home of appellant, something like a mile or mile and a half distant; and the correspondence of such tracks with those of appellant; and the trailing of these tracks by witnesses, and also by a dog, from the scene of the homicide to the home of appellant. Appellant relied upon the want of testimony sufficient to connect him with the homicide. There is also testimony in the record tending to show appellant's condition of mind at the time of the alleged homicide, suggesting he was not in a sane condition of mind at that time; and also some evidence suggestive of alibi.

Appellant insists that the court committed error in admitting the testimony of J. D. Stafford as to tracks. The substance of his testimony, as taken from the bill, is as follows: That he found a track near the scene of the homicide, leading from the direction of the killing toward defendant's house; the tracks seem to have been made by a worn everyday shoe; that he did not measure these tracks, nor did he measure the track or shoe of defendant after the homicide; that he

saw the shoes defendant had on after the homicide, but did not believe said shoes would make the track he found on the ground; that they were better shoes and would have made a better track, but the length and size of them were about the same; that he did not have defendant make a track and compare it with the track he found going from the scene of the killing in the direction of the house; that he just observed his foot; that he saw him make a track in the sand, and it was about the same size shoe as the other track; it looked to be about a No. 8. This was objected to by appellant on the ground that, in the absence of some measurement or some comparison of the tracks found on the ground and the shoe worn by defendant after his arrest, witness was not authorized to give his opinion as to the similarity of said tracks. In effect we understand the contention urged by appellant to be, that witness failed to detail any such facts, in connection with the tracks found on the ground and of shoetracks known by him to have been made by defendant, as would authorize him to give an opinion as to the similarity of the tracks on the ground and tracks made of shoes worn by defendant. In order to support his contention, appellant refers us to Gill v. State, 36 Texas Crim. Rep., 589; Grant v. State, 42 Texas Crim. Rep., 275; 58 S. W. Rep., 1025; Smith v. State, 77 S. W. Rep., 455. On the same subject, the State has referred us to a number of authorities, beginning with Thompson v. State, 19 Texas Crim. App., 593. In Thompson's case, which is followed by Clark v. State, 28 Texas Crim. App., 189, and other cases, it appears that the court, under a state of facts no stronger than here presented, permitted the witnesses to give their opinion to the jury as to the similarity of tracks found upon the ground and tracks made by defendant, or tracks that would be made by shoes known to be worn by him. In Clark's case, the court seems to predicate its opinion that the evidence was admissible, under authorities which authorize the witness to give a shorthand rendering of the facts. More recently, however, this court has held in a number of cases that before a witness can give his opinion to the jury as to the similarity of the tracks, the witness must testify to something more than a mere casual observation of the tracks found at the "locus in quo," and tracks made by defendant and known to be his. Before he can give his opinion, the witness must have made some measurement of the tracks found upon the ground, and the foot or shoe of defendant; or that he made some comparison between tracks found upon the ground and shoes known to be defendant's as placing the shoe of defendant in tracks on the ground; or, if there are peculiarities in the tracks made upon the ground, such as worn places or peculiar tracks, and such places or tracks were found upon the shoes known to belong to defendant. the witness can detail such facts, and can then give his opinion as to the matter of similarity between said tracks. McLean v. State, 30 Texas Crim. App., 482; Rippy v. State, 29 Texas Crim. App., 43; Grant v. State, 42 Texas Crim. Rep., 275; Moseley v. State, 4 Texas Ct. Rep., 435; Thompson v. State. 8 Texas Ct. Rep., 768; Smith v. State, 8

Texas Ct. Rep., 843. It occurs to us that the above decisions announce the better doctrine, and we accordingly hold that the witness Stafford did not detail sufficient facts in order to give his opinion to the jury as to the similarity of the tracks made upon the ground and tracks known to be made by appellant. We would not be understood, however, as holding that the witness Stafford was not authorized to testify before the jury as to the tracks he found upon the ground—where he found them, and to what point they led, and the size thereof as they appeared to him, and other conditions and circumstances connected therewith. He could also testify before the jury as to the size, shape, etc., of any track or tracks that he may have seen defendant make after the homicide, and without giving any opinion of his own, leave the jury to draw their own deductions therefrom. Ransom v. State, 6 Texas Ct. Rep., 259.

Appellant also assigns as error the action of the court permitting the witness Lucas Edmunds to testify as to tracks. This witness stated, in substance that he found a track near the scene of the killing and followed it to where defendant lived; that said tracks appeared to be made by a No. 8 or 9 shoe, and appeared to be shoes that were worn and run down to some extent; that he did not see the track all the way from the scene of the homicide to where appellant lived; that he began in about forty yards of the south end of the house where deceased was killed, and followed the track to the branch, about 150 yards from said house; that here he lost the track for some fifty yards and struck it again and followed it pretty regularly until they reached the woodland; that they were unable to find any tracks in the woodland except one or two; said woodland was about 400 or 500 yards across. "After passing out of the woodland we found one other track, about fifty or seventy-five yards from defendant's house." The tracks witness found along the way looked like the other tracks that he found near the place of the homicide; that he thought they were the same tracks; that there was something about the tracks that would attract attention, and this peculiarity was in all the tracks he found. This testimony was objected to on the part of appellant because witness was not sufficiently definite about the size and appearance of said tracks to give his opinion that the track found in the woodland was the same track found near defendant's house; and that it was not shown that witness took any measurement of the track; and he stated he did not know whether it was made by a No. 8 or 9 shoe, and that he did not detail any peculiarities about the tracks. However, the court in explanation of the bill states that the witness said that the tracks he followed "appeared to have been made by a tolerably old and worn shoe, and one of the shoes was a little turned, but one shoe was turned a little worse than the other, and it appeared that it was an old shoe, a work shoe. Some of the witnesses measured the track. It had rained that day. The track that was trailed had been rained on; all other tracks were fresh and made since the rain.

The track was trailed from about forty yards of the scene of the killing almost continuously to the wood-lot that surrounded the dwelling house of defendant. The witness described the size and appearance of the tracks and their peculiarity." It will be observed that this witness, according to the bill, did not undertake to give his opinion as to the similarity of the tracks he trailed upon the ground with shoes known to be worn by defendant, or tracks known to be made by him; but merely testified before the jury that he trailed certain tracks from near the scene of the homicide to or near appellant's home, describing said tracks, and the tracks he trailed appeared to his mind to be the same tracks. In our opinion this testimony was admissible as a circumstance tending in some degree to connect appellant with the offense. He was shown by other witnesses to have worn an 8 or 9 shoe; and this witness trailed certain tracks which appeared to him to have been made by a No. 8 or 9 shoe from near the homicide to or near appellant's home. We do not believe the admission of this testimony conflicts with any of the opinions referred to, but is in accord with Ransom's case, supra. As heretofore stated, this was a case depending on circumstantial evidence and every circumstance which might tend in any degree to identify appellant with the homicide was admissible against him. If, as in this case, tracks were found upon the ground where the homicide was committed, and these were traced to appellant's home, regardless of any ascertained or determined similarity between such tracks and other tracks made by defendant, said testimony would be admissible. Of course, if the tracks agree in a general way with the tracks made by defendant or shoes worn by him, the circumstances would be stronger. If they agree accurately, or there were peculiarities between the tracks found upon the ground and shoes worn by defendant, the circumstances would be very strong. But the want of strength in the circumstances would not render the evidence inadmissible. If the circumstance has a tendency to connect appellant with the offense charged, under the general rule such circumstance is admissible.

Appellant complains of the action of the court receiving the following testimony, over his objections. W. D. Snodgrass was introduced as a witness for the State, and in substance stated that he was constable of precinct No. 1 of Titus County, Texas, and when he heard of the homicide he went over to where it occurred, and carried Sam Porter's dog; that this dog was kept for the purpose of running people, and was a bloodhound; that he had had experience with this dog, and it had been trained and was reliable; that if he was taken to a place and put on the track, and he ever opened on the track, he would run that track to its destination, and he would run no other track except that particular track; that after he had run said track to its destination he could be put on another track; that he was present when the dog was put on the track at the scene of the killing; that he kept up with him a part of the way, but he ran so fast he could not keep up all the way; that when he got to where appellant lived, the dog was there. Appel-

lant objected to that part of the evidence where the witness testified that the dog would keep the track—that he would run it till he reached its destination—because said evidence was necessarily the expression of the witness' opinion in the matter, about which he could give no opinion. Appellant also objected to the acts of the dog running the the track, on the ground that said evidence was immaterial, irrellevant, hearsay, and a matter wholly disconnected from the defendant, and was a transaction that occurred when defendant was not present, and one for which he could not be bound. The court, in overruling the objections, explained that the witness said he had seen this dog tried often, and he spoke from experience with the dog. With reference to the last proposition, that is, whether testimony that the dog took a certain track and trailed it to appellant's house, we would observe that so far as we are advised, the authorities are not numerous. Such testimony, however, has been held admissible in Alabama and Kentucky, and perhaps other States. See Hodge v. State, 98 Ala., 10, 13 So. Rep., 385; Simpson v. State, 111 Ala., 7, 20 So. Rep., 573; Pedigo v. Commonwealth, 103 Ky. 41, 44 S. W. Rep., 143. In the latter case, the court, citing two other cases, bases its opinion as to the admissibility of such evidence upon our common knowledge and experience with reference to the qualities of trained dogs of certain pure breeds, and that such evidence is admissible in connection with other circumstances, as a fact or circumstance tending to connect a party with a crime. We quote from that case as follows: "After a careful consideration of this case by the whole court, we think it may be safely laid down that, in order to make such testimony competent, even when it is shown that the dog is of pure blood and of a stock characterized by acuteness of scent and power of discrimination, it must also be established that the dog in question is possessed of these qualities, and has been trained or tested in their exercise in the tracking of human beings, and that these facts must appear from the testimony of some person who has personal knowledge thereof. We think it must also appear that the dog so trained and tested was laid on the trail, whether visible or not, concerning which testimony has been admitted, at a point where the circumstances tend clearly to show that the guilty party had been, or upon a track which such circumstances indicated to have been made by him. When so indicated, testimony as to trailing by a bloodhound may be permitted to go to the jury for what it is worth, as one of the circumstances which may tend to connect the defendant with the crime of which he is accused." It occurs to us that the reason for the admissibility of such testimony is founded upon correct logic. It is a matter of common knowledge and observation that trained animals of the hound species are capable of trailing and following tracks of human beings; and they have been used time out of mind for that purpose. Here, according to the testimony of the witness, the track assumed to be that of the supposed murderer, and which the circumstances in evidence tend to show was his track, was pointed out to the dog. He trailed this track

from where it was pointed out to him, to the residence of the defendant, some mile and a half; and the course of his pursuit of the track was followed by witnesses who testified in the case, and they show that the dog followed this track which they saw upon the ground and which they described to the jury. We hold that this character of testimony is admissible.

The other objection urged is, that the witness was permitted to speak of his knowledge and experience of the dog as being an animal trained for the purpose of running down human beings. Without this testimony we do not believe the evidence would have been admissible.

Appellant objected to the State laying a predicate for the contradiction of Mrs. Phoebe Spearman wife of deceased, in this, that the State was permitted to ask her, "Did you not on the day that your husband was buried, at Mrs. Ella Spearman's house, tell her that on Saturday before Travis was killed on Wednesday, they sent for you to go over to your father's house, and that you went without Travis, and that when you got there your father asked you if Travis was coming, and your father immediately got his gun and went in the direction that Travis would come afoot, and that when Travis came, he came in a buggy around the road, and that now, since your husband was killed, you could look back over it all, and see that your father had killed Travis?" To which she replied in the negative. The State was then permitted to contradict her, showing that she did use the language above quoted to Mrs. Ella Spearman. Of course, defendant having put Phoebe Spearman on the stand, it was competent to cross-examine her in regard to any fact about which she testified, and it was competent to ask her with reference to the transaction that occurred at her father's house on the Saturday before the homicide; that is, that she informed her father, when he asked her if Travis was coming, and she said yes, and that her father then got his gun and went off with it, etc. But it was certainly not competent to adduce from this witness her belief or opinion, after looking back over all that had happened, that she had the belief that her father had killed Travis, her husband; much more was it not competent, when she denied her belief, or the expression of it in that respect, to impeach her by another witness.

And in this same connection it was further shown that the State was premitted to lay the predicate for this witness' contradiction on another matter, which involved her belief in appellant's guilt. In her cross-examination she was asked if she did not tell Jewel Spearman, while she was in the buggy with her following the body of her husband home from the scene of the killing, the following: "I believe that my father killed Travis, and nobody else, and he killed him because I married Travis." She denied this. Thereupon the witness Jewel Spearman was placed on the stand for the State, and it was proven by her that the witness Phoebe Spearman did state to her as above shown. This testimony was equally inadmissible. Like the former, it was not an impeachment upon any fact pertaining to the case, but an impeachment

of the witness, as to statements made by her or assumed to be made by her, as to her belief of appellant's guilt. This question was directly before the court in Drake's case, 29 Texas Crim. App., 265; and it was there distinctly held that such evidence was not only inadmissible, but was exceedingly hurtful. It is not necessary to reiterate the argument of the court in that case here, but under this authority, as well as other cases following it, this testimony should not have been permitted. Wilson v. State, 37 Texas Crim. Rep., 64; Cogdell v. State, 43 Texas Crim. Rep., 178; Morton v. State, 43 Texas Crim. Rep., 533.

The attempt to control this testimony by the charge of the court was without effect and futile.

We further hold in this same connection, that it was not competent to ask this witness Phoebe Spearman if she did not refuse at the examining trial to go in the room where her father was, and stated in that connection to the witness Ella Spearman, "If my father is in the opera house, where they are holding the examining trial, I do not want to go there, for I don't want to see him;" and then on her denial of said statement to impeach her by the witness Ella Spearman. This was clearly getting before the jury in an indirect manner the opinion of the witness as to her father's guilt, and was not proof of any fact or circumstance from which that guilt could be legitimately inferred. All of this testimony was hurtful and injurious to appellant and should not have been admitted. Of course, this does not exclude any fact connected with any transaction having legitimate bearing upon the question of appellant's guilt about which the witness may have been asked, but all testimony in regard to her opinion or belief as to any fact, much less as to appellant's guilt, was not legitimate evidence to be proven orginally against appellant, and if she denied the same, she could not be impeached in regard thereto.

Appellant objected to the following testimony of State's witness Lightfoot, by whom the State proved certain inculpatory statements made by appellant to him, or in his presence, as the voluntary statement of appellant at the inquest, he being the county attorney, and after defendant had been duly warned. It appears that after Lightfoot had testified as to certain statements made by appellant to him, after being duly warned, defendant then quit talking; and the district attorney questioned him as follows: "Mr. Parker, didn't you take your gun with you?" And he said yes. He then asked, "Why did you take your gun with you if you were going over there to rent land?" He replied, "I had it along to shoot rabbits with; he said the rabbits had been bothering his corn." I said, "Mr. Parker, why do you want to kill rabbits this time of year?" and he said, "I just shoot a rabbit every time I see one." I said, "What did you shoot the rabbit with?" and he said, "With buckshot." I expressed some surprise that he would use buckshot to shoot rabbits with, and he said he had them in his shot sack. I then said, "Now, Mr. Parker, isn't it true that after you got over into the Archer field that you went over to Travis Spearman's

house, that you went through the mouth of the lane, that you crossed over the road and went up into those bushes in front of the house; and then didn't you go back around the hill and get around to the back of Spearman's house, and under cover of those peach trees and weeds, and then didn't you slip up to that window; and when you saw him through the door with his back to you, didn't you fire and shoot him in the back, and then when you heard him halloo, 'Oh,' didn't you walk around and fire another shot in his temple?" He said, "Men, if I did, I don't have any recollection of it. I may have done it, but I don't know anything about it. My mind was a perfect blank." I then said, "Mr. Parker, isn't it strange that you know when you left your home; isn't it. strange that you remember carrying your gun; isn't it strange that you remember that you shot a rabbit; isn't it strange that you remember that you reached the Archer field, and then your mind became a blank, and you have no recollection of what occurred after that, and yet you can remember leaving the Archer field; you can remember coming home, and describe your course all the way back; you can remember sitting down on the back steps and pulling off your shoes; and you can remember going in the house and pulling off your clothes, and you can remember the sheriff coming out there; you can remember that after you changed your clothes you went up to your son's house, and how long you stayed there; you remember you went back to your house, and yet you can't remember what happened to you at that particular time?" He then said, "Men, I may have done it, but I don't remember anything about it." Defendant was not represented by counsel at that time.

This testimony was not admissible. We understand the rule to be that when one is under arrest, there must not only be the statutory warning given, but the statement made must be freely and voluntarily made, and the burden is on the State to show this. Here defendant, after he had made a statement, was rigidly cross-examined by the attorney representing the State. There is evidently a distinction between testimony which is freely and voluntarily given and that which is elicited by means of a cross-examination. We would not be understood as holding that all statements made in answer to questions are not admissible on that account; but the line must be drawn somewhere, and while it may be difficult in some character of cases to see where the line should be drawn, yet we believe in this case there is no difficulty. Elicited as it was on a severe cross-examination, it was not freely and voluntarily made. Gallaher v. State, 40 Texas Crim. Rep., 296.

Appellant criticises the charge of the court on murder in the second degree. In our opinion said charge in applying the law to the facts should also have embraced the idea of an unlawful killing and upon malice aforethought. We would further suggest, if the facts on another trial are the same as shown in this record on the subject of alibi and insanity, the court should instruct the jury on these subjects. The court

'should also follow the approved forms in a charge on circumstantial evidence.

For the errors discussed, the judgment is reversed and the cause remanded.

*· Reversed and remanded.*.