### JOE CASANOVA v. THE STATE.

#### No. 5608.   Decided March 3, 1920.

**1.—Theft of Cattle—Conspiracy—Evidence—Co-conspirator.**

Upon trial of the theft of a cow, it was error to admit testimony of a conversation between the officers and certain third parties who claimed to have made an agreement, with reference to stealing the cow, with the defendant, which conversation was after the commission of the offense and in the absence of the defendant.

**2.—Same—Confessions—Arrest—Predicate.**

Where, upon trial of theft of cattle, the evidence showed that defendant came to the court-house at the call of a deputy sheriff whose purpose was to arrest him and who afterwards did place him in jail, his declarations to the officers under such circumstances were inadmissable and no proper predicate was laid to admit them as his confessions.

**3.—Same—Tracks—Evidence—Comparison—Measurement.**

Where there was no measurement made of the tracks found and no other peculiarity shown that would indicate that defendant made the tracks at the point where the alleged cow was taken, testimony in regard thereto was inadmissible. Following: Tankersly v. State, 51 Texas Crim. Rep., 170, and other cases.

Appeal from the District Court of Bexar.   Tried below before the Hon. W. S. Anderson, judge.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the · penitentiary.

The opinion states the case.

*Andrew H. Young* and *Jno. R. Storms,* for appellant.—On question of tracks: Parker v. State, 46 Texas Crim. Rep., 461, and cases cited in the opinion.

On question of confession while under arrest; Bonatz v. State, 212 S. W. Rep., 494; Buckner v. State, 52 Texas Crim. Rep., 271; Zimmer v. State, 64 id., 114.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On question of declarations of co-conspirator: Heard v. State, 9 Texas Crim. App., 1; Smith v. State, 71 Texas Crim. Rep., 661; Kaufman v. State, 70 id., 438; Serrato v. State, 74 Texas Crim. Rep., 413, 171 S. W. Rep., 1133.

On question of tracks: Pinkerton v. State, 71 Texas .Crim. Rep., 195, 160 S. W. Rep., 87; Liles v. State, 62 Texas Crim. Rep., 32; Ruckner v. State, 51 id., 222.

On question of confession: Lane v. State, 669 Texas Crim. Rep., 65, 152 S. W. Rep., 897; Belcher v. State, 71 Texas Crim. Rep., 646, 161 S. W. Rep., 459.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of cow theft and allotted two years in the penitentiary.

The testimony, without repetition, is sufficiently strong to show that Williams, the alleged owner, had a cow stolen from him at night. Circumstances indicate there were three parties connected with it as shown by the tracks on the ground at the place of taking. The State relies upon the testimony of Martin, a negro who turned State's evidence, appellant's confession, and supposed similarity of tracks found at the place of the taking and tracks subsequently made by appellant in thin scattered sand on a sidewalk. As we understand the record this is the strength of the State's case. The day following the taking the accomplice Martin and Arocha sold the animal and received a check in payment, which check was not paid. It is shown after the check was given and before it reached the bank, payment was interdicted by the signer of the check. The officers had a conversation with Martin and Arocha with reference to their movements and connection with the cow and check in the absence of the defendant. This was adduced in evidence over the protest of appellant as shown by his bill of exceptions. The State undertook to make this admissible by showing there had been a general agreement with reference to stealing cattle and their disposition. Martin so testified but excluded appellant's presence or participancy in the agreement. This he said was made between himself and other parties, Arocha and Louis Casanova. At the time and for two months afterward appellant was in Tennessee and had no connection with it. In other words, his testimony excludes appellant's participancy in this agreement. We are of opinion that the acts, declarations and conduct of Martin and Arocha the day after animal was stolen were not admissible against appellant under the predicate laid.

Appellant's confession was introduced over objection. In this connection the evidence shows that Martin, Arocha and perhaps Louis Casanova had been arrested. Louis Casanova was related to appellant. Louis Casanova and Arocha had gone on Martin's bond under various charges, among others, rape or assault to rape, and stealing turkeys. They were taken to jail. As a predicate for the introduction of the confession the record shows that Ed Stevens, a deputy sheriff, stated: "We arrested the Mexican and brought him to the sheriff's office, and was thereafter asked if he remembered when he had arrested Joe Casanova, the defendant, to which

he replied: I don't remember the time of day and further stated that 'at the time he made a statement we had him in the sheriff's office in custody. We had filed no complaint against him. We had brought him up to the sheriff's office but we hadn't filed any complaint against him at that time. I had him in custody as deputy sheriff at that time. If he had attempted to go we would of held him there for investigation, and we are holding him there in the sheriff's office, and I don't believe I would have let him go if he had wanted to go,' and on cross-examination stated further: 'I did not communicate any such thing to him. He was in the office whether he came up there or was brought there—I think he came up there. At that time I had no warrant for him. I didn't tell him he was under arrest. I never said a word to him about putting him under arrest before he made the statement. I simply sent him word to come to the office and he came up to me and made the statement.' '' This is not the entire statement of Stevens, but the remainder of his testimony did not change the above. Also in this connection Tony Diaz, another deputy sheriff, testified: ''I sent for Joe Casanova the day he was brought into the court-house. I telephoned for him at his house and asked him to come for his uncle's car. He came to the sheriff's office and I first saw him at the entrance of the steps going from the county clerk's office and the hall-way. I told him that Will Martin and the other boys had spilled their guts. He said that if he was going to get into trouble the others were going to get into trouble and he started telling me about it. I told him that if he wanted to make a statement I would take him to Mr. Stevens who was walking towards me at the time and he went in with Mr. Stevens. I turned him over to Mr. Stevens, the man to whom he was going to make the statement. I don't recollect whether he asked me for the keys to the automobile; he might of asked me for the keys but I don't remember; I taken him and turned him over to Mr. Stevens, by taking him I mean Mr. Stevens walked up to me and I told him Joe wants to make a statemen and he went in with him to the sheriff's office and I went over to the county clerk's office to try another man there to find out what his case was. I left him in charge of Mr. Stevens and when I came back they were writing the statement. I did not send for Joe Casanova at the house for the purpose of his making a statement. I telephoned to him to get him down here. I telephoned for him to come for his uncle's car. My purpose was to arrest him. He knew I was a deputy sheriff. I would not have permitted him to go and I sent for him for the purpose of arresting him. I had already heard the facts about the matter and I concluded I would put him under arrest and did, and I left him under arrest in charge of Mr. Stevens while I went somewhere else. I phoned out to this man's house and told him to come and get his uncle's car. His uncle's car was right here on the side of the

court-house and he came after his uncle's car and came up to the sheriff's office where Ed Stevens and I were. I was just walking out of the door and Ed Stevens was with me. When I met him there at the door I told him that Will Martin and Tom had spilled their guts; then he immediately said, 'Well, if any of us get into trouble we will all go together,' and I then said to him that if he wanted to make a statement to make it to Ed and he walked right on back with Ed Stevens. I didn't put him in control of Ed at all, I simply told him that if you want to make a statement go to Ed and make it and he just walked in with Ed. I arrested him after he got through with the statement and then took him to jail. That statement was made in the matter of investigation as to who we would arrest. I telephoned him for the purpose of putting him under arrest. I would not have let him go after he came here. I did not communicate to him my purpose at all. So far as I know he thought he was up here for the automobile, he did not try to leave.''

We are of opinion that under this predicate the statement of appellant or confession was not admissible. This evidence shows that he came to the court-house at the call of the deputy sheriff Diaz, whose purpose was to arrest him and did place him in charge of Mr. Stevens. Stevens says he had him in custody, though he did not actually arrest him until after he had made the statement. Appellant's reply to Tony Diaz, when he informed him of the confession or statement of the other parties, to the effect if he had to go the others would go with him, indicated that he recognized the fact that he was not only suspected of crime but was brought there for the purpose of being held for the offense under the statement of the other parties. This is shown not only by his statement but the statement of Diaz and Stevens. While the statement was reduced to writing, it was not in accord with the statute, and, therefore, was inadmissible as a written statement. The admission of this statement or confession of appellant was error.

There is a bill of exceptions to the admission of testimony with reference to tracks. Deputy Sheriff Diaz testified that he saw tracks of three persons at the place where the animal was alleged to have been taken. The tracks of one person he said indicated that one track made a deeper impression in the mud than the other. He paid no particular attention to the tracks otherwise than as stated. He says he did not notice them particularly and the only characteristic he saw was that one track made a deeper impression than the other tracks at that point. When he sent for him to come to the court-house he testified he saw appellant make tracks on the side walk. He also testified there was a slight covering of sand on the sidewalk at this point, but stated he did not know the depth of the sand, but it was very shallow; that he was not able to say whether it was one-eighth of an inch or one-

quarter of an inch; that he noticed these tracks and one made a deeper impression in this sand than did the other; about like those he saw at the place of the alleged taking. He says he paid no further attention to it than to notice the peculiarity stated; that he thought the tracks were similar. There was no measurement of the tracks and no other peculiarity mentioned that would indicate that appellant made the tracks at the point where the cow was taken. This is, in our judgment, too indefinite and uncertain to be taken as a fact or introducible as such to connect appellant with the tracks made in the field where the animal was taken. There must be something more definite. See Tankersly v. State, 51 Texas Crim. Rep., 170; Parker v. State, 46 Texas Crim. Rep., 464; Grant v. State, 42 Texas Crim. Rep., 275; Smith v. State, 45 Texas Crim. Rep., 405;. Thompson v. State, 45 Texas Crim. Rep., 397.

We are also of opinion that the agreement between Martin, Tom Arocha and Louis Casanova as to engaging in stealing cattle and disposing of them should not have been admitted against appellant under the circumstances already stated. He was not connected with that agreement in any way, and was absent from the State when it was made.

It is unnecessary to discuss the question of a special charge with reference to the confession, inasmuch as it has been held inadmissible and will not enter into a succeeding trial.

For the reasons indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*