The appellant, Johnny Lee Holcombe, was indicted for the offense of first degree robbery, in violation of § 13A-8-41, Code of Alabama 1975. After a jury trial, appellant was found guilty of robbery in the third degree and was sentenced to ten years' imprisonment as a habitual offender.
On December 15, 1982, between 12:00 and 12:30 p.m., Lee Marvin Reese drove by Ben's Service Station on Highway 97 in Hayneville, Alabama, and waved to an old schoolmate who was standing outside the building. Mr. Reese testified that he recognized this person as appellant and stated that appellant returned his wave. Mr. Reese stated that appellant was wearing a pair of blue jeans, a blue jean jacket and a brown stocking cap when he observed him outside the store.
Dan Watson, an off-duty Alabama State Trooper, testified that he drove by the service station at about this same time. He, too, noticed an individual standing outside the store wearing jeans, light colored shoes, a "reddish colored garment on the top part of his body," and a cap.
Billy Yelder, the robbery victim, testified that he was working at Ben's Service Station on December 15, 1982. Mr. Yelder stated that while he was standing near some grocery shelves a black male wearing blue jeans, a plaid shirt, white tennis shoes and a stocking mask over his face ran into the store and put a knife to his back. The robber stated, "Give me the money." Mr. Yelder stated that he gave his assailant paper currency consisting of one twenty dollar bill, two ten dollar bills, four five dollar bills, between twenty and thirty one dollar bills, and some food stamps.
Ray Brown testified that on the day of the robbery he was driving his car up to the service station around 12:00 noon. As he was driving up, a man wearing a mask, blue jeans, white tennis shoes, and a plaid shirt ran out of the store and almost ran into his car. Mr. Brown observed the direction in which the fleeing man ran.
Soon after the robbery, Officer Tony Holladay of the Alabama Department of Corrections arrived at the service station with two tracking dogs. After being shown the direction where the robber ran, the dogs picked up the robber's scent and began "tracking" toward a race track that was located in the area. While following the dogs, the officers recovered a cap. However, due to the heavy rain that began to fall, the dogs lost their scent and the tracking was abandoned.
Lowndes County Sheriff John Hulett testified that, around 1:00 p.m. that same day, he went to appellant's mother's house located near the race track to question appellant *Page 665 
about the robbery that had just taken place. Upon questioning, the appellant denied any involvement in the robbery or ever going to Ben's Service Station on that particular day. Sheriff Hulett stated that appellant appeared to be "really nervous." Sheriff Hulett stated that appellant, when asked whether he had changed clothes that day, told him that he had not. At the time of questioning, appellant was observed wearing brown pants and a "reddish plaid" shirt.
Appellant's mother's house and his girl friend's house located nearby were subsequently searched. A pair of blue jeans that were wet and dirty around the cuffs was found underneath a mattress in his girl friend's house. Money matching the denominations as that taken in the robbery was also recovered. No food stamps were found, however.
Rosa Lee Holcombe, appellant's sister, testified that she saw appellant go into their mother's house and change clothes around "12 something" on the day of the robbery. She stated that, before appellant went into the house, he was wearing blue jeans, white sneakers and a plaid shirt. Ms. Holcombe stated that her brother changed into brown pants, a plaid shirt and brown shoes. She further testified that appellant left their mother's house with the clothes he had taken off.
Brenda Brown, a roommate of appellant's girl friend, testified that the money found underneath the mattress belonged to her. She could not remember, though, how much money she kept under her mattress.
Appellant testified in his own behalf and denied any knowledge of the robbery. He admitted that the blue jeans found beneath the mattress at his girl friend's house were his, but he stated that they had been there for two days and were not wet. Appellant also admitted pleading guilty to an unrelated robbery charge in 1980.
Appellant contends that the cap found during the tracking of the robber was improperly admitted into evidence since no chain of custody was shown at trial. We do not agree.
Officer Holladay testified that the cap was found as the dogs followed the robber's scent. He stated that his assistant picked up the cap in his presence and handed it to one of the Sheriff's officers at the scene.
Earl Hill, a Lowndes County jailer who was helping in the search, testified that he received the cap from Officer Holladay's assistant. Mr. Hill stated that he put the cap in a bag and handed it to Sheriff Hulett.
Sheriff Hulett testified that he received the evidence from Mr. Hill. He stated that said evidence was in his care, custody and control from the time of receiving the evidence until he brought it to the trial. All witnesses in the chain of custody identified the cap at trial as the one they had handled.
 "To warrant the reception of an object in evidence against an objection that an unbroken chain of custody has not been shown, it is not necessary that it be proved to an absolute certainty but only to a reasonable probability, that the object is the same as, and not substantially different from, the object as it existed at the commencement of the chain."
Donner v. State, 409 So.2d 461 (Ala.Cr.App. 1981). Based on the above facts, we find that a sufficient chain of custody for the cap was established, and, therefore the cap was properly admitted.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur. *Page 666