STATE of Iowa, Appellee,

v.

Roy Laverne BULLER, Appellant.

No. 93–701.

Supreme Court of Iowa.

May 25, 1994.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas S. Tauber, Asst. Atty. Gen., and Richard Phillips, County Atty., and Dana Christiansen, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

HARRIS, Justice.

In this appeal from an arson conviction, the defendant challenges testimony concerning the reaction at the fire scene of a dog trained in fire accelerant detection. We find no error in the testimony and affirm.

I. We review questions of admissibility of evidence for an abuse of district court discretion, meaning that we accord wide latitude to the district court on the question of sufficiency of foundation. *State v. Spilger,* 508 N.W.2d 650, 652 (Iowa 1993). Established rules of evidence however cannot be ignored under the guise of trial court discretion. *Id.*

II. Following a fire in his Muscatine apartment, defendant Roy Laverne Buller was charged with first-degree arson. *See* Iowa Code §§ 702.11, 712.1, 712.2 (1991). Buller's appeal, following a jury's guilty verdict, assigns only one error: admitting descriptions of a dog's actions that indicated it detected the scent of a fire accelerant. This evidence was offered to show the fire was a result of arson.

Buller asserts the evidence lacks a proper foundation, noting the existence of two types of cases involving police dogs. The first involves the use of dogs to search for hidden drugs and explosives. *See, e.g., United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). In these cases, the evidence was used to establish probable cause for a search and seizure, but does not directly speak to the guilt or innocence of the party. *Id.* The second line of cases deals with testimony concerning the tracking abilities of dogs and the use of that testimony to identify a suspect. *See, e.g., Ramus v. State,* 496 So.2d 121, 123 (Fla.1986). We believe the latter cases, those involving tracking, more closely resemble this case. Dog tracking evidence, like accelerant detection, is evidence of a defendant's ultimate guilt. Drug and explosive detection evidence is almost exclusively used to analyze probable cause in the context of search and seizure.

Although accelerant detection by dogs seems not to have been addressed by any state appellate court, a related question, the cases in the second mentioned group concerning dog-tracking evidence, has been. A thirty-two state majority has taken the view that evidence of trailing by dogs of one charged with a criminal offense is admissible to prove identity in a criminal prosecution, provided the proper foundation is laid. *Holcombe v. State,* 437 So.2d 663 (Ala.Cr.App. 1983); *Wilkie v. State,* 715 P.2d 1199 (Alaska App.1986); *State v. Coleman,* 122 Ariz. 99, 593 P.2d 653 (1979); *Rolen v. State,* 191 Ark. 1120, 89 S.W.2d 614 (1936); *People v. Craig,* 86 Cal.App.3d 905, 150 Cal.Rptr. 676 (1978); *State v. Wallace,* 181 Conn. 237, 435 A.2d 20 (1980); *Cook v. State,* 374 A.2d 264 (Del. Supp.1977); *Mitchell v. State,* 202 Ga. 247, 42 S.E.2d 767 (1947); *State v. Streeper,* 747 P.2d 71 (Idaho 1987); *State v. Netherton,* 133 Kan. 685, 3 P.2d 495 (1931); *Daugherty v. Commonwealth,* 293 Ky. 147, 168 S.W.2d 564 (1943); *State v. Green,* 210 La. 157, 26 So.2d 487 (1946); *Terrell v. State,* 3 Md.App. 340, 239 A.2d 128 (1968); *Commonwealth v. Le Page,* 352 Mass. 403, 226 N.E.2d 200 (1967); *People v. Riemersma,* 104 Mich.App. 773, 306 N.W.2d 340 (1981); *Hinton v. State,* 175 Miss. 308, 166 So. 762 (1936); *State v. Long,* 336 Mo. 630, 80 S.W.2d 154 (1935); *State v. Parton,* 251 N.J.Super. 230, 597 A.2d 1088 (1991); *People v. Muggelberg,* 132 A.D.2d 988, 518 N.Y.S.2d 285 (1987); *State v. Styles,* 93 N.C.App. 596, 379 S.E.2d 255 (1989); *State v. Iverson,* 187 N.W.2d 1 (N.D.1971); *State v. Dickerson,* 77 Ohio St. 34, 82 N.E. 969 (1907); *Buck v. State,* 77 Okla.Crim. 17, 138 P.2d 115 (1943); *State v. Harris,* 25 Or.App. 71, 547 P.2d 1394 (1976); *Commonwealth v. Hoffman,* 52 Pa.Super. 272 (1912); *State v. Johnson,* 306 S.C. 119, 410 S.E.2d 547 (1991); *Copley v. State,* 153 Tenn. 189, 281 S.W. 460 (1926); *Parker v. State,* 46 Tex.Crim. 461, 80 S.W. 1008 (1904); *State v. Bourassa,* 137 Vt. 62, 399 A.2d 507 (1979); *Epperly v. Commonwealth,* 224 Va. 214, 294 S.E.2d 882 (1982); *State v. Socolof,* 28 Wash.

App. 407, 623 P.2d 733 (1981); *State v. McKinney,* 88 W.Va. 400, 106 S.E. 894 (1921). Five states, including Iowa, have ruled that evidence of the conduct of a dog who trailed the accused is inadmissible on a theory that it is too unreliable and dangerous. *State v. Grba,* 196 Iowa 241, 194 N.W. 250 (1923); *People v. Stewart,* 229 Ill.App.3d 886, 594 N.E.2d 429 (1992); *Brafford v. State,* 516 N.E.2d 45 (Ind.1987); *State v. Storm,* 125 Mont. 346, 238 P.2d 1161 (1951); *Brott v. State,* 70 Neb. 395, 97 N.W. 593 (1903).

Buller of course contends our holding in *Grba* is controlling and that it was error to admit evidence of the dog's accelerant detection. But *Grba* was decided more than seventy years ago, at a time when courts were considerably less friendly to expert testimony than they are today. Testimony of experts is now governed by Iowa rule of evidence 702. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

■ We have a liberal tradition in the admission of opinion evidence under this rule. *Hutchison v. American Family Mut. Ins. Co.,* 514 N.W.2d 882, 886 (Iowa 1994); *State v. Barrett,* 445 N.W.2d 749, 751 (Iowa 1989). "The trend of our cases ... has been toward broadening the scope of admissibility of expert testimony." *State v. Klindt,* 389 N.W.2d 670, 674 (Iowa 1986). "The question is whether the proffered evidence will assist the jury in resolving an issue." *Id.* at 672. "That determination necessarily requires a threshold finding of reliability 'because unreliable evidence cannot assist a trier of fact.'" *State v. Murphy,* 451 N.W.2d 154, 156 (Iowa 1990). There is no requirement that the expert be able to express an opinion with absolute certainty: "an expert's lack of absolute certainty goes to the weight of his testimony, not to its admissibility." *United States v. Cyphers,* 553 F.2d 1064, 1072–73 (7th Cir.1977). The district court has discretion to determine the admissibility of expert opinion testimony and reversal is justified only when the court has abused its discretion. *State v. Hulbert,* 481 N.W.2d 329, 332 (Iowa 1992).

■ The evidence in this case qualifies as expert testimony and is admissible under rule 702. Evidence of the reaction at a fire scene of a dog trained in accelerant detection is a type of specialized information that will assist a trier of fact. Accelerant detection by a trained dog is probative in arson cases in that it provides direct evidence that a crime has been committed.

■ In addition to rule of evidence 702, expert testimony must survive rule of evidence 403. 2 Spencer Gard, *Jones on Evidence* § 14:9, at 609 (1972). Rule 403 requires that evidence, though relevant, should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Iowa R.Evid. 403. We see little or no danger of unfair prejudice in the evidence here, certainly nothing that would outweigh its probative value on the question of the fire's origin.

*Grba* is out of step with rules of evidence 403 and 702 and with our present understanding of expert testimony. It is overruled.

■ Even so the challenged evidence is not automatically admissible. Under rule 702 (and also under the majority cases, previously cited, relating to dog-tracking evidence) a foundation is required for admissibility. Buller argues it was lacking.

Testimony of Michael Dean Hiles, the handler of Ty, the dog whose reactions were the subject of the challenged testimony, is a special agent with the state fire marshal's office, a division of the Iowa department of public safety. He served with the state patrol beginning in January 1974 and was transferred to the fire marshal's office in February 1980.

He attended short courses in fire investigations, hazardous chemicals and other related subjects in Missouri and Maryland and has attended a number of other seminars and training sessions. He is a member of the International Association of Arson Investigators. He investigates between seventy and

100 fires per year and frequently testifies as an expert on his investigations.

■ According to the record there is no place he could have received training on the subject of training and using a dog to detect fire accelerants. The evidence indicates it is a specialty that Hiles developed himself with his own dog, Ty. The fact that Hiles obtained his expertise in training and handling dogs in fire accelerant detection is no bar to admissibility. Practical experience, in a proper case, will suffice to qualify an expert witness. *Hutchison,* 514 N.W.2d at 888; Mark McCormick, *Opinion Evidence in Iowa,* 19 Drake L.Rev. 245, 263 (1970); *see also* 31 Am.Jur.2d *Expert and Opinion Evidence* § 57 (1989). Hiles is widely recognized as a pioneer in the field.

He bought Ty as a seven-week-old puppy in 1985 and trained him in general obedience. In the summer of 1986 Hiles began training Ty to detect and respond to the odor of gasoline, using training techniques adapted from those used by law enforcement officers to train dogs to detect illegal drugs and explosives. Later that year Hiles began training Ty to detect samples of gasoline that he had placed in actual fire scenes. Hiles then used Ty to detect accelerants at the scene of suspected arsons. Over the next few years Hiles trained Ty to respond to the odor of other flammable liquids, including diesel fuel, kerosene, charcoal lighter fluid, and alcohol. He continued to train Ty regularly, both in and away from fire scenes, and took Ty to many of the fires that he investigated.

Given his years of experience and training in working with Ty, Hiles was qualified to give the expert opinion testimony. The record also supports a finding that Ty was sufficiently trained to serve in the investigation. This was shown, first by Hiles' training of the dog, and was confirmed by evidence that the accuracy of Ty's reaction to accelerant scents was authenticated. This was done in several ways.

In a large percentage of cases, about three out of four, Ty's location by scent of accelerants was later confirmed by laboratory tests using a gas chromatograph. A seventy-five percent confirmation rate is perhaps not impressive until it is explained that the twenty-five percent of cases lacking laboratory confirmation can largely be attributed to human error in gathering the material sampled for analysis. It must be remembered too that the accelerant tends to dissipate from the sample while awaiting analysis.

In the present case later laboratory tests proved inconclusive, placing this analysis within the twenty-five percent group. But the State offered evidence strongly indicating that the laboratory analysis was considerably less reliable in detecting fire accelerants than trained dogs. There was no evidence that Ty would indicate the existence of an accelerant where no accelerant existed.

Ty's accelerant detection ability was frequently confirmed by visual observation of the dog's selection of its location. Fire investigators have long noted physical characteristics left from the ignition at a fire's source. Investigators, as a part of their expertise, "read patterns" often left by flames and flame residue. Ty of course had no human knowledge of these patterns. But the points he indicated by scent were consistently confirmed independently as the fire source on the basis of patterns. Finally, Ty has a distinguished record of accuracy from many fire investigations where other evidence later confirmed his selection of the fire's source.

Hiles and other investigators, by reading patterns in a mattress selected by Ty, independently confirmed Ty's reactions to be correct, lending specific authenticity to Ty's reaction here.

■ Foundation for expert testimony under rule of evidence 702 has been shown by evidence establishing: (1) the dog handler's expertise; (2) the dog's training; and (3) the general accuracy of the dog's reaction during investigations. This is sufficient foundation. In the present case it is further bolstered by evidence of accuracy in this particular investigation. Buller's challenge to the foundation is without merit.

**AFFIRMED.**