## I. M. LEVINE v. STATE.

No. A.-7599. Opinion Filed March 6, 1931.
(296 Pac. 758.)

 

Pitchford & Pitchford, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. Plaintiff in error, hereinafter called defendant, was convicted in the district court of Okmulgee county of the crime of grand larceny, and his punishment fixed by the jury at imprisonment for eighteen months in the state penitentiary.

The evidence of the state was that the defendant at the time of the larceny was engaged in the business of buying and selling second hand oil well supplies and materials, with an office in the city of Okmulgee; that the prosecuting witness, J. K. Gardner, was an oil contractor and producer; that in May, 1927, Gardner left Okmulgee and went to Pennsylvania and remained there until the 5th day of February, 1928; that when Gardner left for Pennsylvania he was the owner of 3,500 feet of seven-

eighths inch galvanized drilling cable No. 69241-A and 4,500 feet of wire cable and sand line, which property was worth approximately $1,000, and the same was located on section 35—13—13, in Okmulgee county; that soon after Gardner returned from Pennsylvania he visited the lease where the property had been left, and found that the same had been removed therefrom in his absence; that Gardner had not authorized any one to remove or dispose of said property; that search was made for the missing property and that this search led to the office of defendant; that defendant seemed surprised to learn that the property was missing and said he would help find it if he could, and asked Gardner to look defendant's yard over; that later it was discovered that defendant had sold this cable and sand line in November, 1927, to J. E. Martin, for $450, which was less than one-half the value of the property, and that defendant delivered the property to Martin's lease near Bixby, in Tulsa county; that defendant talked to a truck man about 4 o'clock one afternoon and said that it had to be hauled that evening and showed the driver where it was; and that about dark the driver took the truck and got the stuff and hauled it to the location near Baldhill.

It also appears in the evidence of the state that the defendant took from 2,500 to 3,000 feet of oil well casing from the Gardner lease and rented it to one H. B. Smith and collected $500 rent for the same; that defendant told Smith that the pipe belonged to some Jews in Tulsa.

Defendant testified and his defense was that he took the property in controversy from the Gardner lease in pursuance of an agreement Bill Hewitt, an alleged partner of defendant, had with Gardner to sell Gardner's property for $20,000 and take as commission the surplus above $20,000 and whatever production Gardner had, amounting to 8 or 10 barrels. Hewitt was not called to testify, and

the only evidence offered by the defendant to support his claim was what he claimed Hewitt told him about his contract with Gardner.

If the jury believed the unsupported story of the defendant that he sold the property in good faith believing that he had a right to do so by virtue of the alleged agreement which he claims Hewitt said that he (Hewitt) had with Gardner, then the jury might have acquitted him.

The defense of the defendant amounted to a contention that he was not guilty of the crime of larceny, but, if guilty of anything, it was embezzlement.

"Larceny" is defined in section 2101, C. O. S. 1921, as follows:

"Larceny is the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof."

Under this definition, the evidence of the state establishes a case of grand larceny, and not embezzlement.

Defendant contends that the state failed to prove that the property was taken without the consent of Gardner, the owner.

Gardner, the owner of the property, testified that he nev_ gave the defendant or Hewitt any authority to sell any part of the property or to remove the same from the premises; but that he did, a few months before he left for Pennsylvania, authorize Hewitt to sell all the property on the lease for the sum of $20,000 cash, to one Vivens, in Tulsa; and that when Hewitt failed to make that sale that Gardner withdrew the proposition and never thereafter conferred with Hewitt or any one else, nor authorized anyone to take the property from the lease or sell the same.

While the prosecuting witness does not directly say that the property was taken by the defendant from the lease wthout his consent, yet all the facts and circumstances in the case show that the taking was without his consent.

In Filson v. Territory, 11 Okla. 351, 67 Pac. 473, that court said:

"In order to support a conviction for the crime of larceny, the proof must show that the property which is the subject of larceny was taken without the consent of the owner; but direct and positive declarations of the owner are not required. If all the facts and circumstances in evidence connected with or surrounding the taking will warrant the reasonable and rational inference that the property was taken without such consent, then such verdict will not be disturbed for lack of direct proof."

In George v. U. S., 1 Okla. Cr. 307, 97 Pac. 1052, 1054, 100 Pac. 46, this court said:

"The fact that the owner caused search to be made for the stolen property is a cogent circumstance to show want of his consent to the taking."

Defendant next contends that the court erred in admitting evidence that at the time the stolen property was found by Gardner an effort had been made to destroy or efface the numbers that were on the spool on which the cable was wound.

This was a circumstance tending to show that the property was probably taken with a felonious intent to appropriate it and to deprive the owner of it, instead of under any claim of right. The weight of this evidence, of course, was dependent upon the showing made connecting defendant with the act of defacement or mutilation. Here defendant admits the taking, and that admission is at least sufficient to show the exercise of some dominion

and control over this property by defendant before its discovery and after the taking. No one else would have any motive to deface the property, and this fact was a sufficient predicate to render the evidence admissible and let the jury pass on its probative force. Watson v. State, 125 Ark. 597, 187 S. W. 434; Johnson v. State, 77 Ga. 68; Areola v. State, 40 Tex. Cr. R. 51, 48 S. W. 195; State v. Church, 54 Utah, 53, 182 Pac. 218.

Defendant next contends that the trial court erred in excluding certain material and competent evidence offered by defendant.

An examination of the record discloses that practically all the evidence complained of was admitted by the court, and since defendant made no tender of the balance of what he expected to prove, this court is unable to tell whether the same was competent or not. If the court refuses to permit the introduction of evidence, the party offering the same should dictate what he expects to prove by the witness into the record and let the court rule upon same and save his exceptions. Where there is no offer to prove anything further and no showing made, there is nothing before this court for review.

Defendant next contends that the court erred in failing to instruct the jury that they must find that the property was taken without the consent of the owner.

In instruction No. 1, the court, after defining "larceny," said:

"Before you can convict the defendant of grand larceny as charged in the information, you must find that the defendant took the property by fraud or stealth, without the knowledge or consent of the owner thereof, and against his will, and that the defendant had, at the time of such taking, the intent to deprive the owner thereof permanently."

162

The setting out of this instruction shows the contention of the defendant to be without merit.

Defendant complains of other instructions, but the record discloses that no exceptions were saved to the same.

When all the instructions are considered together, they fairly state the law of the case and are as favorable to the defendant as the facts in the case would warrant.

Finally, it was contended that the defendant was deprived of a fair and impartial trial by reason of the alleged prejudice of John S. Briscoe, one of the jurors. The record discloses a clear conflict of fact as to the alleged disqualification of this juror. The juror swore positively that he knew nothing about this case nor about the defendant or his reputation, when he was sworn as a juror, and that he had no prejudice against him; that there was nothing in his mind at the time that could have prevented him from giving the defendant a fair trial.

The affidavits filed by the defendant in support of his motion for a new trial set out that the next day after the trial the juror discovered that he had had some tools stolen from him; that this discovery incensed him, and he expressed himself in no uncertain terms regarding thieves in general. This all occurred after the trial of the case and could not have had any bearing on any prejudice that said juror could have had against defendant prior to the trial. The juror made a rebuttal affidavit for the state, in which he denied making the statements set out in the affidavit offered by the defendant and reiterated all he had said in his examination on his voir dire, and denied that he had any prejudice against the defendant that in any manner prevented defendant from having a fair hearing before the jury.

The granting or overruling of a motion for a new trial upon the ground complained of is within the sound discretion of the trial court. Where there is a clear conflict between the showing on the part of the defendant and the state, such ruling will not be disturbed on appeal unless it affirmatively appears from the record that such discretion was abused.

To hold that this showing of alleged prejudice is such as to entitle the defendant to a new trial would place a premium on speculative grounds for disqualifying jurors and open the door to the granting of new trials on such grounds to such an extent as to encourage perjury and render the verdicts in criminal cases in this state unstable and of no force or effect.

The evidence being sufficient to support the verdict of the jury, and the errors of law complained of being without substantial merit, the cause is affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.