STATE v. O. C. FOSTER.

No. A-8751.   Sept. 1, 1934.
(35 Pac. [2d] 733.)

See, also, 55 Okla. Cr. 450, 32 Pac. (2d) 750.

J. Berry King, Atty. Gen., and J. M. Springer, for the State.

W. L. Coffey and Bruce Potter, for defendant in error.

EDWARDS, P. J.   O. C. Foster was tried on a charge of murder, was acquitted, and the state appeals on a reserved question of law.   Questions answered in opinion.

This case comes to this court under the third subdivision of section 3191, Okla. Stat. 1931, upon exceptions to the ruling of the trial court excluding evidence offered by the state.

Defendant and one Buddy Jones were jointly indicted for the murder of one Elmer Payne, as a part of a conspiracy with James Hollis and Lester Swannegan.   The state's theory and the testimony in support is about as follows:   Defendant, a negro, conducted a drug store in Tulsa and was engaged in what is known as the "policy racket."   Elmer Payne, a white man, also conducted a "policy racket" in competition with defendant and had a place of business in the negro section of Tulsa.   For the state, Hollis, a negro convict, testified he met defendant and was informed by him that he had several "jobs" he wanted done and would pay $500 for the first job.   Hollis agreed to this, and the next day defendant left $100 with Jones, with a note stating he wanted John Smitherman "bumped off" and would pay Hollis and Jones the stipulated price.   Smitherman was a negro police officer, who had been arresting defendant's policy writers and giving him trouble, while allowing Payne to run unmolested.   Hollis further testified this $100 was divided between

him and Jones; that defendant furnished a pistol and money to buy another to be used in the killings desired by defendant; that later defendant told him there were others interfering with his business whom he also wanted killed, among them Elmer Payne and one Margaret Hilton. That after some delay, however, the killing of Smitherman was abandoned, but defendant demanded that Elmer Payne be killed at once. Hollis and the defendant then went to Kansas City to buy a bomb to be used in killing Payne; there they purchased a bomb from some Italians but were arrested in Kansas City by police officers and required to pay $300 to be liberated. They were arrested again and Hollis put in jail, but defendant was liberated. That a day or two later Hollis was released, told to see Lestern Swannegan, which he did, and he and Swannegan went by freight train to Tulsa. There defendant, Hollis, and one Birdsong and some other person made an attack on the home of Margaret Hilton, in which they fired several shots at the house and threw an incendiary cloth ball, saturated with gasoline and ignited, upon the house; the purpose being to have her come out of the house so that they could kill her. The state also called Margaret Hilton, who corroborated Hollis as to the attack on her house. She further testified she saw defendant, Birdsong, and one Goodwin in the attacking party; that they threw the gasoline-soaked ball onto the house; that the fire department came and extinguished the fire; and that the fire ball was recovered. Now comes the crucial point presented by this appeal. The state offered to prove the attack on the Hilton house by John Smitherman and to prove the recovery of the incendiary ball by the assistant fire chief, and also offered to prove the same facts by one Larkin Hilton. All this testimony offered as to the attack on the Hilton house was objected to by defendant, the objections

sustained, and the testimony excluded; the court assigning as a reason that the offense was an entirely separate and distinct offense from the one charged. The killing of Payne was about a week after the attack on the Hilton house. In the affray at the killing of Payne, Lester Swannegan of the attacking party was also killed.

The rule of law is well settled that evidence of other crimes is competent to prove the specific crime charged when it tends to establish a scheme or plan or as part of a general conspiracy or is a part of the res gestae or shows intent or motive, or where it is so closely linked to the crime for which accused is on trial as to throw light on it. Starr v. State, 5 Okla. Cr. 440, 115 Pac. 356; State v. Rule, 11 Okla. Cr. 237, 144 Pac. 807, and authorities therein cited; Quinn v. State, 54 Okla. Cr. 179, 16 Pac. (2d) 591, and authorities therein cited.

It is competent to prove a crime charged was part of a general scheme or plan which included other offenses. If, under the state's evidence, the attack on the Hilton house was a part of a general conspiracy between Hollis, Jones, and others to kill several persons who were troublesome to defendant in the operation of his policy racket, and which conspiracy also included the killing of Payne, which is the basis of the charge in this case, it is competent, although removed in point of time by several days, and although it may tend to prove defendant guilty of a crime other than that charged in the information. The general rule that evidence which shows the accused guilty of a crime different from that for which he is on trial is inadmissible would not apply for the state has the right to put in evidence all relevant facts and circumstances which tend to establish his guilt of the crime charged, even though it may tend to prove he has committed other crimes. Evidence is to be considered as to its relevancy to show

guilt of the offense charged, regardless of the fact that it may also tend to show the commission of other crimes. Whether evidence tending to show other crimes is relevant and admissible is a matter of judgment, and courts may differ as to whether particular matters of evidence have a logical connection with the crime charged. When the admissibility of evidence is doubtful, generally the doubt should be resolved in favor of an accused. In the instant case, from a consideration of the facts and circumstances, from the state's standpoint, we are satisfied there is a logical connection between the attack on the Hilton house and the killing of Payne and that the evidence offered should have been admitted under proper instructions limiting its application and that its exclusion was error. 8 R. C. L. p. 198, § 194F; 16 C. J. p. 586, § 1132F; Hollingshead v. State, 21 Okla. Cr. 306, 207 Pac. 104.

So far as either the state or defendant is concerned, the admissibility of the evidence excluded is of no material importance, since the defendant has been acquitted and so far as we are informed no charge is pending against him. As to his codefendant a different situation exists. The admissibility of the evidence excluded no doubt will arise in the trial of that case. For that reason this court has expressed the opinion that the excluded evidence was admissible and the codefendant, not being a party to this appeal, is not to be precluded from presenting the question of admissibility and having his day in court.

DAVENPORT and CHAPPELL, JJ., concur.