# HOLMAN v. STATE.

No. A-11807. Oct. 21, 1953.

(262 P. 2d 456.)

Brown & Brown, Pryor, and Miller & Miller, Tahlequah, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

BRETT, J. The plaintiff in error, O. B. (Sloke) Holman, defendant below, was charged by information in the district court of Mayes county, Oklahoma, with the commission of the crime of assault with intent to kill, Title 21, §§ 652, 653, O.S. 1951, one Dickson Gurley by shooting him with a 22 rifle. The crime was allegedly committed on October 19, 1950, about 2¾ miles northwest of Locust Grove, in Mayes county, Oklahoma. The defendant was tried by a jury, convicted; the jury was unable to agree on his punishment and left the penalty up to the court with a recommendation of a suspended sentence. The trial judge fixed

the defendant's punishment at 5 years in the penitentiary, without suspending the sentence. Judgment and sentence was entered on said conviction in the trial court on June 17, 1952, from which this appeal has been perfected. Briefs were finally submitted in this court on January 27, 1953. The record in this case consists of 415 pages.

The prosecuting witness, Dickson Gurley, an ordained "Free Will" Baptist minister, testified he lived about 2 or 3 miles northwest of Locust Grove, Oklahoma, adjacent to his father, and that the defendant Holman lived about 10 acres west of Dickson Gurley. He related that in addition to his ministry he farmed, raising corn in the Grand River bottom, about 2½ miles west of his home place. He testified that to get to his cornfield you had to cross the Cedar Crest road, located about ¾ of a mile west of Mr. Holman's place. A Mr. DeMoss accompanied him and his father to the cornfield in a wagon and team, on the date of the alleged crime. They passed by O. B. Holman's place on the way to the field that morning. He stated they gathered a load of corn, came to Mr. Hammond's house, he being the landlord of Gurley, where they ate the noon meal, visited for quite a while and started home. At the Cedar Crest road Mr. DeMoss got out and went home, it being about ¼ mile down the road south. Dickson Gurley said he and his father proceeded east towards their home. (The terrain was hilly, and they apparently could not see very far down the road.) He testified at the top of the hill at Cedar Crest, they went down hill, up over a little bench where the road got narrow. They were then not far from home. At that point he said they stopped— because they met O. B. (Sloke) Holman and Bayless Holman, and "Top" Rogers in Rogers' truck and the Holman pickup truck. This point he said was only about ¼ mile from Holman's place. He testified further that his father said, "You fellows come on by, we don't want to have no trouble". Top Rogers said, "You God dam fellows, come on by I'm loaded". His father then turned around and headed back west. They had gone about 1¼ miles when they saw the Rogers truck coming toward them from the west about 100 yards away. Gurley said when he saw them he was praying to God they would have no trouble, and he wouldn't get hurt. About "20 or 30 feet from us" the truck came to a stop. O. B. (Sloke) Holman was armed with a 22 rifle. He stuck it out the right hand window of the truck and shot. The shot hit Gurley, he testified, it went between two of his ribs, penetrating the lower lobe of a lung just above the kidney. The second shot hit a rib, glanced, went through one of his nipples and on into the muscle of his arm (the evidence does not indicate whether right of left). He said he told his father he was shot, jumped off the wagon, started shooting his pistol, six times—he jumped the fence, and took to the brush, north of which was an open field. The defendant, he related, continued to shoot. Gurley ran about a quarter of a mile and fell exhausted. Oscar DeMoss and Charlie Lawson picked him up and took him to the hospital.

The prosecuting witnesses then related the motivation behind the shooting. About the 5th of March, 1950, the record discloses Gurley and Holman had an argument about a gate being nailed up, leading into Gurley's pasture to a road that led to Oscar DeMoss' place. He asked Mr. Holman not to nail it up any more if he did, and Holman called him a "son of a bitch", and said, "I will never get along with you until I whip you". Gurley said he replied, "Well, you better do a good job when you do it", and drove off and left him stomping. Subsequent to that on March 14, 1950 he was waved down on the road by Mr. Holman, who said he understood Gurley had accused him of burning his pasture off. Gurley testified he said, "I am sorry I didn't say any such a thing". Holman, he said, began to cuss him, calling him a "God damned son of a bitch", and threatening to whip him all over the hill. Gurley related he got out and they began to fight. Holman told him he was going to kill him, and hit him with a rock that made him numb. This fight ended and he went home. He related another fight occurred on October 17, 1950, at a garage in Locust Grove where he went to get a battery. Holman, he

said, was there and precipitated that fight by throwing a tire tool at him. It appears from the record that with the aid of his father this fight ended unfavorable to Holman; however the father of Dickson Gurley almost lost his little finger when hit by a tire tool thrown by the defendant. Gurley denied he used a ball peen hammer on Holman. This, in substance, was the chain of events leading up to the shooting, showing bad blood between the parties. After the fight on October 14, 1950, Gurley and his father went to Pryor to get the defendant placed under a peace bond, and were advised it wasn't worth the paper it was written on and to go home and protect themselves.

There was a great conflict in the testimony of the state and the defendant. The defendant's testimony related the facts leading up to the shooting in a manner to place the blame for the preceding encounters on Gurley, and also accused Gurley of starting the shooting. The defendant said he and his son were on their way to the store to get some fruit jar rubbers for Mrs. Holman, when they happened to meet the Gurleys. The defendant admitted he had a rifle with him. The record shows further that he placed himself in such a position he met the Gurleys when Gurley tried to retreat. Nevertheless he plead he shot in self defense. The jury elected to believe the story of Gurley and his father, and other state witnesses, and if believed it is sufficient to support the verdict of guilty. It has been repeatedly held that, when there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty as charged, Criminal Court of Appeals will not interfere with verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and determine the facts. Sadler v. State 84 Okla. Cr. 97, 179 P. 2d 479; Stehrs v. State, 96 Okla. Cr. 290, 253 P. 2d 192. The evidence of the state is sufficient to support the verdict, and is not weak and unsatisfactory as the defendant contends. The foregoing is an answer to defendant's 4th proposition, that the trial court erred in overruling the defendant's demurrer to the evidence, for an instructed verdict, and for a new trial on the insufficiency of the evidence, and that the verdict is contrary to the evidence.

The defendant first contends "the court erred in permitting incompetent, irrelevant and immaterial and highly prejudicial evidence to be given to the jury on behalf of the state, affecting the substantial rights of the plaintiff in error, and which was duly excepted to by the plaintiff in error". The evidence objected to is that concerning the three altercations prior to the shooting episode. He further complains the trial judge in instruction No. 7, wherein he instructed the jury, "This evidence should be considered by you as a circumstance in aiding or assisting you in determining who was the aggressor, or aggressors on October 17, 1950, the day of the alleged shooting, and should not be considered by you for any other purpose". As a general rule evidence of other offenses is inadmissible, but there are many exceptions to the rule. Here, intent is an element of the offense charged, and where such is the situation, "evidence of other offenses committed or attempted by accused is admissible to show, * * * his criminal intent or purpose with respect to the offense charged," particularly is this true "where the other offenses are similar to, connected with, and not too remote from, that charged, and where intent is in issue or an element of the offense charged." 22 C.J.S., Criminal Law, § 686, page 1100. One of the cases cited by the defendant in support of his proposition is Tapedo v. State, 34 Okla. Cr. 165, 245 P. 897. Therein the rule is stated as follows:

"In a homicide case, evidence of the relation of the parties, ill treatment, previous assaults and difficulties, where not too remote, are admissible as tending to establish motive, intent, and state of mind of the parties. Such evidence is not to be excluded although it may tend to prove some other offense. But in such case the court should by proper instruction restrict such evidence to the purpose for which it is admitted."

See, also, Fray v. State, 46 Okla. Cr. 260, 285 P. 142, holding evidence of other offenses is admissible to show motive, intent, animus, etc.; State v. Rule, 11 Okla. Cr. 237, 144 P. 807; Michelin v. State, 66 Okla. Cr. 241, 90 P. 2d 1081; Littrell v. State, 21 Okla. Cr. 466, 208 P. 1048; State v. Foster, 56 Okla. Cr. 170, 35 P. 2d 733, holding evidence of other crimes is admissible as to intent, or where it is so closely linked to the crime for which accused is on trial as to throw light on it. Doser v. State, 88 Okla. Cr. 299, 203 P. 2d 451. But the defendant contends that the instruction in connection with the evidence is not in conformity with the law. He concedes its admissibility as tending to establish "motive, intent and state of mind". We are of the opinion that if this evidence tended to establish motive, intent and state of mind, it also tended to establish who was the aggressor. The trial judge used inept language in using the term "aggressor". He should have limited the evidence to motive and intent, but we hardly see how the jury could on the facts confronting them herein arrive at who was the aggressor without reaching a very definite conclusion as to the intent of such aggressor. The instruction while technically not correct was substantially so, in this case, and does not constitute reversible error. Title 22 § 1068, O.S. 1951. The defendant contends the instances were too remote to be admissible; with this contention we cannot agree.

The defendant further contends, "That the court erred in refusing the defendant the right to introduce certain relevant and material evidence which was necessary to the defense of the defendant and constituted fundamental error". He complains in this regard that the trial court sustained objections tending to show Gurley knew it was a violation of law to carry a concealed weapon. It is immaterial whether he knew it or not for the law so says, but that gave the defendant no right to attempt to kill him, with an unconcealed weapon, by firing the first shot, which the jury evidently believed he did. He further complains he was not permitted to show when Gurley found out he had fired only 6 shots from his pistol instead of 7 as testified to at the preliminary. It is immaterial since he admitted he fired 6 shots. Whether Gurley fired 6 or 7 shots threw little light on the issue of the attempt to kill for which Holman was being tried. The jury found Holman made an attempt on Gurley's life by shooting him. Since Gurley was armed he had a right to fire in self-defense. The record is clear that when he was running away from the altercation the defendant continued to shoot at Gurley. It is likewise immaterial whether Holman fired 6 or 7 shots; regardless of the number fired 2 of them hit the mark; that is sufficient to bring the case within the statute.

The defendant complains that the trial court would not let him show on cross-examination of H. L. Gurley, father of Dickson Gurley, that he told Joe Bowers he went up there to kill O. B. Holman. The answer was in the negative. The trial judge correctly excluded it from the jury's consideration, for threats made by another person certainly could not be attributed to the prosecuting witness, especially when made out of his presence.

Likewise, the physical condition of Holman attempted to be shown by Bayless Holman, son of the defendant, was immaterial to the issues herein involved; regardless of his condition he was in such shape he could shoot accurately. Further, the effort of defendant to show by Bayless Holman that Top Rogers was at the scene of the shooting because he came to see about some saw logs, was hearsay and immaterial. The defendant also complains that he was not permitted to show two other roads that could have been taken by the prosecuting witness and his father rather than the road that led by defendant Holman's house. This was immaterial. Gurley was on a public road where he had a right to be, and when he thought trouble was at hand he turned around and sought an avenue of escape only to be later met by the defendant blocking the

way and shooting Gurley before further retreat could be effected. The defendant complains he was not permitted to show to what hospital he went, and that the wounds on his head in the prior fight on October 14 were skull wounds, and that the effects of the alleged ball peen hammer beating didn't still bother him, all of which is clearly immaterial to the issue of the shooting of October 17. What his condition is now would form no basis for what he did on October 17, 1950. And whether they had an agreement to meet Top Rogers at the shooting is immaterial; he was there regardless of what he came for, and he attempted to get the Gurleys to pass the point of danger on the narrow road. He further complains concerning the introduction of State's Exhibit 5 in evidence as part of the cross-examination of O. B. Holman, same being a Springfield rifle that was taken out of Top Rogers' Buick car following the shooting, later in the day "about dark". The defendant had said on cross-examination this exhibit looked like the gun he used in the shooting. Moreover, the introduction of this rifle into evidence was immaterial, since the defendant admitted he took a rifle with him on the occasion in question and fired it at Gurley, and the record shows, with good aim. The defendant cites no authority in support of these contentions. Certainly, they are not fundamental errors as contended for by the defendant; they did not go to the foundation of the case, or take from the defendant rights which were essential to his defense. Palmer v. State, 78 Okla. Cr. 220, 146 P. 2d 592. In any event, it has been repeatedly held that a judgment of conviction will not be reversed on the ground of improper admission or exclusion of evidence unless, after an examination of the entire record, it appears that there has probably been a miscarriage of justice or a substantial violation of some constitutional or statutory right of the defendant. Louis v. State, 96 Okla. Cr. 269, 252 P. 2d 938; Levine v. State, 50 Okla. Cr. 157, 296 P. 758.

The defendant next contends the trial court erred in not giving an instruction on the lesser offense included in the charge of shooting at another without the intent to kill, though no request was made for the giving of the same. The facts in the case at bar, supported by threats to kill, and the actual shooting of Gurley, would not support the giving of such an instruction, and in such case it is not error for the trial court to refuse to instruct on included assaults. The defendant made no request for an instruction on the lesser offense. One of the cases relied on by the defendant, Pryor v. State, 51 Okla. Cr. 345, 1 P. 2d 797, states the rule adversely to the defendant's contention; therein it was said:

"In the trial of one accused of assault with intent to kill, it is not error for the court to fail to instruct on included assaults, where no request for such an instruction is made and where a reasonable view of the evidence does not tend to prove an included assault."

The case of Ash v. State, 33 Okla. Cr. 253, 243 P. 765, relied on by the defendant is not in point for there the evidence disclosed a sort of sham battle between the parties, nobody was shot, and we agree with the court, as was held by this court, it was error not to submit to the jury by proper instruction the law as to the lesser offense of assault to do bodily harm, but without an attempt to kill. The other cases relied on by the defendant are likewise not factually in point with the case at bar. Moreover:

"Our statutes require a trial judge to instruct the jury as to all matters of law which he thinks are necessary for their information in giving their verdict. If counsel for the defendant are of the opinion that additional instructions should be given to the jury, it is their duty to reduce them to writing, submit them to the trial judge, and request that they be given to the jury. If they fail to do this, a conviction will not be reversed unless the court is of the opinion, in the light of the entire record and instructions of the court, that by the failure of the trial court to instruct the jury upon some material question of law the defendant has been deprived of a substantial right." Adams v. State, 62 Okla.

Cr. 167, 70 P. 2d 821, 822; Merriott v. State, 18 Okla. Cr. 247, 194 P. 263; Williams v. State, 12 Okla. Cr. 39, 151 P. 900; Walker v. State, 92 Okla. Cr. 256, 222 P. 2d 763.

Such requirement as to requested instructions is a provision of the Criminal Code, Title 22, §§ 831, 856, O.S. 1951.

Finally, the defendant next contends that the jury's verdict was returned on the prospect of a suspended sentence, which was contrary to law, as was the judgment and sentence based thereon; and that instruction No. 20 was misleading, erroneous, and fundamental error. In instruction No. 13 the jury were informed that if they found the defendant guilty beyond a reasonable doubt, they should fix the penalty within the provisions of law as set out in instruction No. 3, but further informed them in the event they could not agree on the punishment and so stated in their verdict, they might return a general verdict of guilty and leave the matter of punishment to be fixed by the court. The jury after deliberation returned a verdict into court which the trial court considered contrary to law, apparently because they attempted to suspend the sentence. Then the trial court gave instructions Nos. 18 and 19 as follows:

"No. 18: You are instructed that the verdict you have returned is not in accordance with the provisions of law.

"No. 19: You are instructed that if, in your deliberations, you make a finding that the defendant is guilty, and it is your desire to fix his punishment, you must fix the punishment in accordance with Instruction Number 13, and it is not within the province of the jury to return a verdict of guilty in such a case other than as outlined in such Instruction Number 13.

"However, you are told, in this connection, that you may make any recommendation you may feel proper for the Court's consideration. However, you are told that the Court is not bound by any recommendation you may make, but the same would only be for the Court's consideration."

Thereafter, upon deliberation the jury returned into court for further instructions and the trial judge gave instruction No. 20 reading as follows:

"You are further instructed that it is not within the province of the jury to suspend a sentence. According to law, only the Judge or the Court can suspend a sentence, and the jury must follow the Instruction Number 13. That is, if you find the defendant guilty, there are three alternatives in fixing the punishment. One, you could leave it entirely up to the Court, or you could fix a term of years, and you could recommend to the Court that it be suspended. In other words, you could return your verdict and make that recommendation after your usual verdict, but the verdict must comply with the law, otherwise it wouldn't be acceptable, but you could recommend that the Court suspend, and it would be for the Court's consideration in passing sentence upon the defendant.

"The supplemental instructions heretofore submitted to you are to be considered along with all the other instructions which cover the law in this case; that you have no right to single out one instruction—in other words, they must all be considered as a whole."

Thereafter, the jury returned a general verdict of guilty with a recommendation for suspension of any sentence imposed by the trial judge. It is conceded that instructions Nos. 13, 18 and 19 are according to law. The defendant's position is that the jury wanted to give the defendant a suspended sentence, and if they had not been led by instruction 20 to believe that such would be the case a mistrial would have resulted. We are unable to follow this reasoning since instruction No. 20 was supplemental to instructions 13, 18, and 19 by way of clarifying the jury's powers. Instruction No. 20 starts off with the premise that it is not within the power of the jury to suspend a sentence. Finally, the instruction

informs them that any recommendation for suspended sentence they might make would be for the consideration of the court in passing sentence. The trial judge nowhere informed the jury that such recommendation would be binding and the law does not so require it. Presnell v. State, 71 Okla. Cr. 162, 109 P. 2d 834, wherein the rule is:

"Where the jury returns a verdict of guilty and endorses on the verdict, 'We recommend a suspended sentence,' such recommendation is not a part of the verdict, and is a matter addressed to the sound judicial discretion of the trial judge as to whether he should follow the recommendation of the jury."

In the body of the opinion this court said:

"The trial court in passing sentence, of course, has a right to inquire into the past reputation and conduct of the defendant, which might possibly bring forth matters which would prevent the defendant from receiving a suspended sentence. Unless such investigation shows conduct on the part of the defendant, which indicates that he is not eligible under the statute to receive a suspended sentence for this crime by him committed, this court is of the opinion that great weight should be attached to the recommendation of the jury."

We cannot say in face of the trial record that the trial judge abused his judicial discretion in refusing to follow the recommendation of the jury for suspension of the sentence. For all the above and foregoing reasons, the judgment and sentence herein imposed is accordingly affirmed.

POWELL, P. J., and JONES, J., concur.