**Bill TIPPIT, Jr., Plaintiff in Error,**

v.

**STATE of Oklahoma, Defendant in Error.**

**No. A–12647.**

Criminal Court of Appeals of Oklahoma.

Nov. 12, 1958.

Robert J. Bell, Charles B. Tucker, Mc-
Alester, Okl., for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H.
Lattimore, Asst. Atty. Gen., for defendant
in error.

BRETT, Presiding Judge.

Plaintiff in error, Bill Tippit, Jr., defend-
ant below, was charged by information in
the District Court of Pittsburg County,
Oklahoma, with the crime of manslaughter

in the second degree, 21 O.S.1951 § 716, in effecting the instant death of James Don Wood, an infant, on August 27, 1957, by means of an automobile driven by Tippit at an excessive rate of speed in violation of a city ordinance. Therein it was further alleged he recklessly ran over said child on Hickory Street in McAlester, Oklahoma, in said county and state. He was tried by a jury, convicted, and his punishment fixed at one year in the county jail and a fine of $1,000. Judgment and sentence were entered accordingly, from which this appeal has been perfected.

The defendant makes numerous assignments of error. Only one of the many assignments of error is considered by the Attorney General in his brief, and upon it, he confesses reversible error. The Attorney General's confession of error is as follows: "Bill Tippit, Sr., father of the defendant, had testified as a defense witness. He was not an eye witness and his testimony related largely to physical facts about which there was little or no dispute. He might very well have been subjected to little or no cross-examination by the state. However, the special prosecutor who conducted all of the examination and cross-examination of the witnesses, cross-examined this witness at some length, and in the course of such examination asked whether or not the witness had had a conversation with the father of the deceased shortly after the accident. There had been no previous reference to such conversation. Upon receiving an affirmative answer, counsel asked the question, 'Did you offer him some money if he would not press the charges?' This was not only entirely new and collateral matter, but was calculated to have a very damaging effect upon the defendant's case. Certainly, it was objectionable and, in fact, the district judge later stated that he would have sustained an objection to the entire line of questioning. However, there was no objection made and the witness answered 'Definitely, absolutely not.' Counsel continued to press the examination along this line and elicited from the witness the fact that the witness had been accompanied by a Mr. Harper, who was the insurance adjuster for the Aetna Casualty and Surety Company which carried the insurance upon the automobile which belonged to Mr. Wildman, who was the defendant's employer. The adjuster was interested in discussing and determining the matter of insurance liability. Again, counsel inquired about the matter of $5,000.00 and again the witness stated that 'absolutely no money was mentioned.' Since the examination was upon a matter wholly collateral, we consider that not only was the questioning incompetent but also that the answers of the witness were binding on the state.

"In rebuttal the prosecutor called to the witness stand Mintor Wood, father of the deceased, and immediately referred to the conversation between the witness and the father of the defendant. Evidencing the fact that the purpose was not simply the impeachment of Mr. Tippet, counsel instead of asking the proper impeaching questions of the witness, Wood, asked him to relate his version of the conversation. Proper objection was made but was overruled, and the witness thereupon stated:

" 'And Mr. Tippit, he walked up to me there—off to the side a little bit, and he shook hands with me and said "I am the father of Bill Tippit, Jr.," he said "in my own mind I know that he done it." '

"Objection was immediately interposed and was sustained by the court and the jury instructed not to consider the answer. In the argument that followed counsel further demonstrated the fact that the purpose was not simply to impeach the witness for the state but to prejudice the defendant. Counsel having stated that he only wanted the witness to testify about 'the matter of money,' the witness stated, 'He said "I will give you $5,000.00 if you won't press the charges against my boy." '

"The general rule with reference to impeachment on collateral or immaterial mat-

ters is so well established and has been discussed by this court in so many cases that we will not undertake to discuss the same, but will refer only to some cases which we consider more nearly and directly applicable to the question in this case."

■■■■ In Holman v. State, 97 Okl.Cr. 279, 262 P.2d 456, O. B. Holman was tried for assault with intent to kill one Dickson Gurley. In the body of the opinion, 97 Okl.Cr. at page 283, 262 P.2d at page 461, this Court said, in part:

"The defendant complains that the trial court would not let him show on cross examination of H. L. Gurley, father of Dickson Gurley, that he told Joe Bowers he went up there to kill O. B. Holman. The answer was in the negative. The trial judge correctly excluded it from the jury's consideration, for threats made by another person certainly could not be attributed to the prosecuting witness especially when made out of his presence."

In Parker v. State, 46 Tex.Cr.R. 461, 80 S.W. 1008, 1011, the Court of Criminal Appeals of the State of Texas said, in part:

"But it was certainly not competent to adduce from this witness her belief or opinion, after looking back over all that had happened, that she had the belief that her father had killed Travis, her husband. Much more was it not competent, when she denied her belief, or the expression of it in that respect, to .impeach her by another witness.

"And in this same connection it was further shown that the state was permitted to lay the predicate for this witness' contradiction on another matter, which involved her belief in appellant's guilt. In her cross-examination she was asked if she did not tell Jewel Spearman, while she was in the buggy with her following the body of her husband home from the scene of the killing, the following: 'I believe that my father killed Travis, and nobody else, and he killed him because I married Travis.' She denied

this. Thereupon the witness Jewel Spearman was placed on the stand for the state, and it was proven by her that the witness Phoebe Spearman did state to her as above shown. This testimony was equally inadmissible. Like the former, it was not an impeachment upon any fact pertaining to the case, but an impeachment of the witness as to statements made by her, or assumed to be made by her, as to her belief of appellant's guilt. This question was directly before the court in Drake's Case [Drake v. State], 29 Tex.App. 265, 15 S.W. 725, and it was there distinctly held that such evidence was not only inadmissible, but was exceedingly hurtful."

McKee v. People, 69 Colo. 580, 583, 195 P. 649. In Cogdell v. State, 43 Tex.Cr.R. 178, 63 S.W. 645, 646, the Texas Court of Criminal Appeals said:

"His (defendant's) objections were on the ground that it was an attempt to lay the predicate to impeach his witness Huddleston upon an immaterial and collateral issue, and that said testimony involved a mere matter of opinion, and not any fact which would go to the impeachment of the witness; and that such testimony would not be admissible as an original part of the case; and, furthermore, that it was an inquiry involving an agreement, and it was not shown that defendant had knowledge of such agreement, or was in any wise privy thereto. * * * It is a general rule that a witness can only be impeached by contradictory statements showing that he made a statement in regard to some fact or facts testified to by him on the trial at another time and place different from his evidence at the trial. But this testimony does not appear to come within that rule. It does not embody a traverse of any fact sworn to by the witness on the trial. Indeed, it is not the statement of any fact at all, but the statement of a conclusion, from which it might be inferred that the witness

knew some facts that would be exceedingly detrimental to appellant; in other words, that such facts, in the opinion of the witness, would fix appellant, —evidently meaning they would convict him. The matter was not only collateral, but it was a mere opinion of the witness; such opinion, however, as might prove with the jury very damaging to appellant."

Willis v. State, 13 Okl.Cr. 700, 701, 167 P. 333. In Hall v. State, 51 Okl.Cr. 50, 299 P. 508, it was held:

"When a witness is cross-examined on a matter collateral to the issue, his answer is conclusive, and cannot be subsequently contradicted by way of impeachment by the party putting the question."

58 Am.Jur. 433, Witnesses § 784. The foregoing, in light of the authorities, clearly constitutes prejudicial matter and reversible error.

 Another ground of reversible error, not discussed in the Attorney General's confession of error, goes to an experiment concerning which evidence was received. The experiment was conducted to demonstrate that the child could have been knocked or dragged fifty three feet. A quantity of wet sand was placed in a burlap bag, together with a partially inflated truck tire innertube, which was placed in a vertical position, in an attempt to simulate the body of the deceased child as it was hit by the automobile. This attempt at demonstrative experiment was prejudicial and reversible error because there was so little similarity in the artificial condition and the facts of the case itself. It has been held when the conditions are dissimilar in an essential particular, the evidence should be rejected. 32 C.J.S. Evidence § 583, p. 438; 22 C.J. Evidence § 852, pp. 758, 759. There are so many evident essential particulars in which the conditions herein involved and the experiment are dissimilar that detailing them is unnecessary. It suffices that in Gibbons v.

Territory, 5 Okl.Cr. 212, 115 P. 129, 130, this principle was announced:

"(a) When evidence of experiments is sought to be introduced, it must be shown that the experiments were made under like conditions, on like material, with similar apparatus and under similar circumstances, fairly and honestly made, and they must be testified to by competent persons having expert knowledge thereof.

\*　　\*　　\*　　\*　　\*　　\*

"(c) When evidence of experiments is offered, it should be admitted only when it is clear to the court that the jury will be enlightened and not confused."

This testimony could not have done anything other than create confusion and prejudice against the defendant. State v. Justus, 11 Or. 178, 8 P. 337. The conditions necessary to the admissibility of this evidence were not met, and it was reversible error under the conditions herewith presented to permit evidence as to the result of this experiment.

 There are other errors not discussed in the Attorney General's confession such as the misconduct of counsel in voir dire examination of the jury, in which the impression was left with the jury that the burden of proof was on the defendant to prove his innocence if the jury found the defendant committed a misdemeanor in the operation of his automobile; that proof of any excuse therefor would shift to the defendant. This was an invasion of the court's province to instruct the jury. It certainly was not the province of the special prosecutor to instruct the jury on voir dire examination as to the law of the case and it was error so to do, especially when some of his concepts of the law were erroneous.

 In addition thereto, the defendant urges, not without considerable merit, that the County Attorney abdicated in favor of the special prosecutor and permitted him to supersede him in control of the prosecu-

tion. This has been held to be error. Perry v. State, 84 Okl.Cr. 211, 181 P.2d 280.

█ Furthermore, the trial court permitted testimony to be given as to the speed of the defendant's automobile based upon sound. This has been held to be error. Myers v. State, 93 Okl.Cr. 209, 226 P.2d 451.

There are other strong contentions of error of equally substantial nature in the defendant's forty six assignments of error, but in view of the foregoing, it is not necessary that we review them. It has already been made apparent that the defendant was not accorded that fair trial required under the law. This cause is accordingly reversed and remanded.

POWELL, J., concurs.

NIX, J., not participating.