Ocie **LOVE**, Plaintiff in Error,

v.

The **STATE** of Oklahoma, Defendant in Error.

No. A–16748.

Court of Criminal Appeals of Oklahoma.

Oct. 12, 1971.

Rehearing Denied Dec. 10, 1971.

---

An appeal from the District Court of Love County; G. Dixie Colbert, Judge.

Ocie Love was convicted for the crime of Shooting with Intent to Kill; he was sentenced to three years in the state penitentiary, and appeals. Affirmed.

Kenneth Bacon, Marietta, for plaintiff in error.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., for defendant in error.

**1396**

BUSSEY, Presiding Judge:

Ocie Love, hereinafter referred to as defendant, was charged in the District Court of Love County with the offense for Shooting with Intent to Kill. He was tried and convicted for the offense of Assault with a Dangerous Weapon, and his punishment was fixed at three years imprisonment; from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Sheriff Wesley Liddell testified that at approximately 5:30 p. m. on October 22, 1969, he received a call relative to a shooting west of Marietta, Oklahoma. He thereupon went to the residence of Luther Hornbeak on Highway 32 in Love County, Oklahoma. He found Luther Hornbeak seated in his house suffering from a bullet wound in the abdominal region, and fully conscious. While there, Liddell received a call on his radio reporting that the defendant was in the sheriff's office. He returned to his office to find the defendant, who appeared as if he "had been drinking some." (Tr. 36)

Bill Anderson, General Director of the Goodrich Funeral Home in Marietta, testified that on October 22, 1969, he drove an ambulance to the Hornbeak residence. He arrived at approximately 5:55 p. m. and observed Hornbeak lying down in the living room of his residence. Hornbeak had a bullet wound just below the rib cage in the left abdominal wall. He further observed a knot on Hornbeak's back, which appeared to be a bullet trying to exit. Hornbeak was transferred first to an Ardmore hospital, and from there, to a hospital in Oklahoma City.

Luther Hornbeak stated that his sister, Modie Love, was married to the defendant at the time of the alleged offense. At approximately 5:30 p. m. on October 22, 1969, he heard a car horn honking, and upon going to his porch, he observed his sister turn into his driveway in a 1966 maroon-colored Oldsmobile. Her son, Keith Baker, was a passenger in the car. Defendant was following Modie in another car, and stopped his car on the highway. Defendant got out of his car with a pistol in his right hand. Hornbeak hollered to the defendant and told him not to come to the house with a gun. Defendant continued to approach Hornbeak, cursed him, and attempted to strike him with his left hand, wherein Hornbeak threw up his right hand. Defendant then fired the pistol from a distance of approximately five to six inches. Hornbeak testified that at no time did he have any weapon, or that he made any aggressive movement toward the defendant.

Sarah Hornbeak, Luther's wife, testified that she was standing in the close proximity of her husband and the defendant when the shot was fired. Her testimony was substantially identical to that as offered by her husband.

Keith Baker, age fourteen, testified that the defendant was his step-father, and that he was a passenger of the car driven by his mother on the day in question. His father and mother had previously had marital difficulties, and the defendant had stopped their car on two other occasions, trying to convince his mother to return home. Defendant followed them to the Hornbeak residence, wherein witness's testimony was substantially related by the two prior witnesses. Both Keith Baker and Sarah Hornbeak testified that after the shooting of Hornbeak, the defendant left in the Oldsmobile, taking the gun with him.

Defendant testified that he had marital difficulties with his wife, and that he did stop Modie and her son, attempting to have further discussion with her. When she drove off at a high rate of speed, he became angry and followed her to the Hornbeak residence. He testified that he got out of the car, and that Luther ran over to another house, but could not get inside, and then walked toward him. He testified that he did not know what weapon, if any, Luther had. Luther threw his hand back in a fighting position, and he fired his pistol. He testified that he was in fear of his life at the time he fired the shot. He also testified that after he fired the shot, someone

grabbed him from behind, and took the weapon from him. Defendant denied taking the weapon with him when he left in the Oldsmobile. Defendant admitted prior convictions for Moonshining and for Assault and Battery.

■ The first proposition asserts that improper statements were made during the testimony of the State's witness. Keith Baker testified as follows:

"Q. Had you ever seen Mr. Love carry a pistol before?

"A. Yes, sir.

"Q. On what occasion?

"A. Well * * * on some occasions when we lived in Wichita.

"Q. Okay. Of your own knowledge was this the same pistol?

"A. No." (Tr. 105)

The Record does not reflect where the defendant objected or excepted to the testimony, which he now contends was prejudicial. Young v. State, Okl.Cr., 373 P.2d 273 (1962) states:

"Where the record does not show that counsel for appellant objected or excepted to the admission of certain evidence complained of, his assignment of error thereon is not reviewable, because not properly preserved."

We, therefore, find this proposition to be without merit.

■ The next proposition asserts that the District Attorney made an improper statement in his closing argument to the effect that the complaining witness was protecting his home. We have consistently held that the right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide. Counsel for both the State and the defendant have the right to discuss fully from their own standpoints the evidence and the inferences and deductions arising therefrom. Williams v. State, Okl. Cr., 475 P.2d 622 (1970). We further observe that this proposition is not properly before this Court, in that the defendant did not make a timely objection together with a request that the jury be instructed to disregard the improper statement. Walters v. State, Okl.Cr., 455 P.2d 702.

■ The next proposition contends that the trial court improperly instructed the jury as to the included offense of Assault with a Dangerous Weapon. The Record does not reveal that the defendant objected to the instructions, nor did he submit requested instructions to the court for consideration. We have consistently held that where counsel is not satisfied with instructions that are given, or desires the court to give any particular instruction, or to more definitely or sufficiently state any proposition embraced in the instructions, the duty of counsel is to prepare and present to the court such desired instructions and to request that it be given. In the absence of such a request, the Court of Criminal Appeals will not reverse the case if the instructions generally cover the subject matter of inquiry. Schapansky v. State, Okl.Cr., 478 P.2d 912. We are of the opinion that the instructions given by the trial court generally cover the subject matter of inquiry. We, therefore, find this proposition to be without merit.

■ The final proposition asserts that the trial court improperly instructed the jury that a recommendation of the suspended sentence was not within the province of the jury. The Record reveals that at 11:25 a. m., the jury sent a note to the court which read as follows: "Can we recommend a suspended sentence?" The court returned a note to the jury which read: "This is not within the province of the jury." (Tr. 195) Defendant did not object or take exception to either the question or the court's response to the question. We have previously held that where the jury returns a verdict of guilty, coupled with the words, "Sentence to be suspended," that part referring to the suspended sentence is considered to be surplusage, and constitutes mere recommendation to the court. Scaggs v. State, Okl.Cr., 417 P.2d 331 (1966). In Holman v. State, 97 Okl.Cr. 279, 262 P.2d

456 (1953), we approved a similar additional instruction, which provided:

"You are further instructed that it is not within the province of the jury to suspend a sentence. According to law, only the Judge or the Court can suspend a sentence * * *."

In conclusion, we observe that the Record is free of any error which would justify modification or require reversal, and the judgment and sentence is accordingly affirmed.

BRETT and NIX, JJ., concur.