Anthony Ray ROWLAND, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F-87-832.

Court of Criminal Appeals of Oklahoma.

Aug. 15, 1991.

As Corrected Sept. 18, 1991.

Allen Smith, Norman, for appellant.

Robert H. Henry, Atty. Gen., Diane L. Slayton, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LUMPKIN, Vice–Presiding Judge.

Appellant, Anthony Ray Rowland, was tried by a jury for the crimes of Count I, Burglary in the First Degree, and Count II, Assault with a Dangerous Weapon, in the District Court of Tulsa County, Case No. CRF–87–1002. After deliberation, the jury returned verdicts of guilty of Count I, Burglary in the First Degree and set punishment at seven (7) years imprisonment, and not guilty of Count II, Assault with a Dangerous Weapon. The trial court sentenced accordingly. Appellant has perfected his appeal to this Court from the judgment and sentence rendered in Count I. We affirm.

In the early morning of March 8, 1987, Officer Gary Otterstrom of the Tulsa Police Department was dispatched to the home of Cynthia Jackson, 258 East Independence, Apt. A, Tulsa, on a call designated "trouble unknown". Otterstrom testified that the dispatcher indicated the caller was disconnected during the conversation. When the officer arrived he found that the front door had been kicked in and the door frame split. He also observed two shoe prints on the door, level with the knob.

Both Kenneth Edwards and Cynthia Jackson testified that they were asleep in Jackson's bedroom when they heard a loud noise associated with someone kicking on the front door. Edwards went back to sleep and was awakened not only by the screams of Jackson, but also by Appellant strangling him. Both Edwards and Jackson testified that as the two men wrestled about Appellant was yelling that Edwards caused him to go to jail and threatened to kill him. Appellant also accused Edwards of killing his children. The two men were still wrestling when Perry Jones, Appellant's cousin, entered the upstairs bedroom and begin to pull Appellant off of Edwards. In the meantime, Jackson ran downstairs to call the police. However, as soon as Jones separated the two men, Appellant followed Jackson downstairs. As Edwards started to dress he heard Jackson scream from downstairs. Edwards ran down the stairs just in time to see Appellant and Jones leave the apartment. At the same time he noticed that the dining room table had been moved two or three feet from its normal position and noticed a bruise on Jackson's thigh and her elbow. Edwards did not recall seeing Appellant with a knife.

Jackson testified that while she was in the process of calling the police, Appellant snatched the telephone cord out of the wall and kicked her in the thigh, which caused her to fall up against and over the table. When she got up she grabbed a chair for protection because Appellant was coming for her with a knife. However, Jackson testified that Appellant never raised the knife but kept it down by his side. In her testimony Jackson claimed she sustained a sore arm, leg and back from this altercation. Jackson also stated that over a period of time she has obtained several protective orders against the Appellant, which were introduced into evidence over the objection of defense counsel.

Appellant took the stand and testified that on March 7, 1987, he made a call to Ms. Jackson but Edwards answered the telephone and advised him that Jackson was not at home. Appellant stated that he and Edwards got into a discussion on the telephone about the night a windshield was busted out at Edwards apartment, and during the conversation Appellant claims that Edwards threatened to shoot either him or his kids. Appellant stated that he was drinking with Jones during the early hours of March 8, 1987, when he decided to go over to the Jackson apartment because he got to thinking about the danger his kids might be in from his conversation with Edwards. Appellant admitted that he kicked in the front door and went upstairs, going first to the room of his children. When he found their beds empty he entered the room where Jackson and Edwards lay sleeping and began questioning them about the whereabouts of his kids. Appellant stated that Jackson asked him to leave when Edwards jumped up out of the bed and started to swing at him. Appellant stated that he then hit Edwards, knocking him back on the bed when Jackson jumped on him and started beating him on the back of the head. At that point Jones entered the room, grabbed him around his waist, and pulled him off of Edwards. As he and Jones were leaving, he observed Jackson on the telephone. When Jackson saw them, she picked up a chair and came to the door and threw it at them. However, neither he nor Jones were hit. Appellant denies having any kind of weapon with him when he went to the apartment, and maintains that he only went to the apartment to see if his kids were in danger and had no intent to commit a crime.

In his first assignment of error Appellant contends that the evidence was insufficient to sustain a conviction for First Degree Burglary because the State failed to show any evidence of intent to commit Assault with a Dangerous Weapon, as specifically alleged in the Information. The Appellant argues that since the jury failed to convict him of the crime of Assault with a Dangerous Weapon they could not have found him guilty of the offense of First Degree Burglary.

■ To warrant conviction for Burglary in the First Degree it is not necessary for defendant to have actually committed a crime in the dwelling house, but it is neces-

sary for the Appellant to have the intent to commit a crime at the time of his unlawful entry of the dwelling. *See Newsom v. State*, 763 P.2d 135, 140 (Okl.Cr.1988); *Newton v. State*, 516 P.2d 827 (Okl.Cr. 1973). Hence, in a burglary case, where breaking and entering is definitely proven, the fact that defendant had no opportunity to commit a felony inside the building before his apprehension is not controlling on the question of his intent. *Cherry v. State*, 276 P.2d 280 (Okl.Cr.1954). In other words, whether one intended to commit a crime in a house is determined by the intent of the individual at the time the unlawful entry was made. *Logan v. State*, 239 P.2d 1044, 95 Okl.Cr. 76 (1952). Determination of intent is a question for the trier of fact and may be proven by direct or circumstantial evidence. *Plunkett v. State*, 719 P.2d 834 (Okl.Cr.1986), *cert. denied* 479 U.S. 1019, 107 S.Ct. 675, 93 L.Ed.2d 725 (intent to assault victim established by act of defendant in grabbing at victim's nightgown); *Parrott v. State*, 522 P.2d 628 (Okl.Cr.1974).

■ In the case at bar there is no dispute that Appellant broke into the home of Jackson sometime around 2:00 a.m. by kicking in the door, and that he was not invited into the dwelling either by Jackson or Edwards. Appellant does deny having an altercation with Jackson who testified that Appellant pushed her and left her with a sore arm and leg. Appellant also denies having any intent to commit a felony when he entered the apartment.

> This Court has consistently held that: [W]here there is competent evidence in the record from which the jury could reasonably conclude the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts.

*Johnson v. State*, 725 P.2d 1270 (Okl.Cr. 1986); *Truelove v. State*, 545 P.2d 1270, 1271 (Okl.Cr.1976). Although there was conflicting evidence, we cannot say that the jury's determination of guilt was not supported by the evidence. We find this proposition to be without merit.

■ In his second allegation of error Appellant contends that the trial court erred in failing to instruct the jury on the lesser included offenses of Forcible Entry and Detainer and Malicious Injury to Property. It must first be noted, and the Appellant concedes, that he failed to request that such instructions be given to the jury. Because this proposition of error has not been properly preserved, we will only search the record for fundamental error.

■ It is the general rule that the trial court should instruct on lesser included offenses, whether requested or not, only if the evidence reasonably tends to support a lesser included offense. *Langdell v. State*, 657 P.2d 162 (Okl.Cr.1982). This Court has consistently held that it is the duty of the trial court to determine as a matter of law whether the evidence is sufficient to justify the submission of instructions on a lesser included offense, and if there is doubt, the court should submit the matter to the jury. *Rumbo v. State*, 750 P.2d 1132 (Okl.Cr. 1988); *Hanna v. State*, 560 P.2d 985, 991 (Okl.Cr.1977).

■ This Court, in *Smith v. State*, 695 P.2d 1360 (Okl.Cr.1985), determined that Illegal Entry is not a lesser included offense of Burglary or Attempted Burglary because the State is not required to prove force in a charge of Illegal Entry. We conclude that in the present case, Malicious Mischief is not a lesser included offense of Burglary in the First Degree for the same reason. Here, because there is evidence of force and the State is not required to prove force in a charge of Malicious Mischief as in Burglary I, an instruction on Malicious Mischief was not required. Based upon the foregoing, it was not fundamental error to omit an instruction on Malicious Mischief on these facts.

■ Further, the State contends that Forcible Entry and Detainer is not a lesser included offense of Burglary I. We agree. Forcible Entry and Detainer is a civil action, strictly possessory in nature, so that

ordering the immediate right to possess is all that is involved or can be determined. 36A C.J.S. *Forcible Entry & Detainer*, § 3 (1961). See also, 12 O.S.1981, § 1148.1 et seq. It is a summary proceeding for restoring to possession of land one who is wrongfully kept out or has been wrongfully deprived of the possession. *Black's LAW DICTIONARY*, 649 (6th ed. 1990). Not only is Forcible Entry and Detainer not a lesser included offense, but it is a civil action inappropriately raised as an issue in this proceeding. Thus, we find that the trial court's failure to instruct on an action for Forcible Entry and Detainer was not error.

■■■ In his final proposition of error, Appellant claims that the trial court erred in admitting, over defense counsel's objection, evidence of Appellant's violations of protective orders. Title 12 O.S.1981, § 2404(B), of the Oklahoma Statutes provides that Evidence of other crimes or acts is not admissable to prove the character of a person in order to show that he acted in conformity therewith; but that it may be admissable for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

This Court in *Wadley v. State*, 553 P.2d 520 (Okl.Cr.1976), citing II Wigmore on Evidence, § 396 (3rd ed. 1940), recognized that where hostile emotions at a particular time are to be proved in a case, the existence of the same emotion in the same person at another time is proper. Thus, evidence of previous altercations between an Appellant and a deceased is relevant to establish motive, malice, or intent "even though such evidence constitutes evidence of another crime". *See Lamb v. State*, 767 P.2d 887 (Okl.Cr.1988); *Manning v. State*, 630 P.2d 327, 330 (Okl.Cr.1981).

Although the Appellant was found not guilty on the charge of Assault With a Dangerous Weapon, intent to commit a crime was still an issue. In fact, *Holman v. State*, 262 P.2d 456, 97 Okl.Cr. 279 (1953), clearly established that where intent is an element of the offense charged, evidence of other offenses committed or attempted by the accused is admissible to show his criminal intent or purpose with respect to the offense charged. In this situation, introducing the victim's protective orders was relevant to establishing intent. These protective orders, along with other evidence, established that at the time of the incident, Appellant had a motive, as well as intent, to commit a crime. Thus, this assignment of error is without merit.

Accordingly, for the foregoing reasons, the judgment and sentence is AFFIRMED.

LANE, P.J., and JOHNSON, J., concur.

BRETT and PARKS, JJ., concur in result.

PARKS, Judge, concurring in result:

I agree with the ultimate disposition of this case. However, I write separately because I am disturbed by the Court's determination that Forcible Entry and Detainer is solely a civil offense. I find the offense listed under Title 21, the Criminal Law Title of Oklahoma Statutes, at section 1351. That section entitled "Forcible Entry and Detainers" states in relevant part:

> Every person guilty of procuring, encouraging or assisting another to use any force, or violence in entering upon or detaining any lands or other possessions of another ... is guilty of a misdemeanor. (emphasis supplied)

Clearly, the offense may be properly classified as a crime. Nonetheless, I agree with the majority that a violation of the statute is not a lesser included offense of burglary.